Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com

Jeremiah M. Hudson, ISB No. 8364
FISHER RAINEY HUDSON
910 West Main Street, Suite 254
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 297-2689
Email: jeremiah@frhtriallawyers.com

*Attorneys for Plaintiffs*
*and the Proposed Sub-Classes*

U.S. COURTS

JAN 24 2014

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YVETTE NORTON, JEANNETTE RODRIGUEZ-GUZMAN, KELLY BARKER, JOSEPH BELL, BRAD EPPERLY, STEPHANIE JONES, KATHERINE KELLEY KNOWLES, NANCY RICHARDS, and MARK ZUMWALT, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:14-cv-00030 |
| *Plaintiffs,* | **COLLECTIVE ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MAXIMUS INC. | |
| *Defendant* | |

//
//
//
//

**COLLECTIVE ACTION COMPLAINT - 1**

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Jeannette Rodriguez-Guzman, Yvette Norton, Kelly Barker, Joseph Bell, Brad Epperly, Stephanie Jones, Kelley Knowles, Nancy Richards, and Mark Zumwalt, are Trainers or First-Level Supervisors who are employed by Defendant Maximus, Inc. ("Maximus" or "Defendant," unless otherwise specified). Plaintiffs, individually and on behalf of all other similarly situated Trainers  and First-Level Supervisors (as defined below), complain by their attorneys Howard Belodoff of Belodoff Law Office PLLC, and Jeremiah M. Hudson of Fisher Rainey Hudson as follows:

## I. INTRODUCTION- NATURE OF THE ACTION

1.      An employer's obligation to pay its employees overtime wages is more than a matter of private concern between the parties. That obligation is founded on a compelling public policy judgment that members of a modern, humane society are not simply indentured servants but are entitled to work a livable number of hours at a livable wage. Minimum wage and overtime laws mark the boundary between a humane society and its Industrial Era precursor of child labor and eighteen-hour work days. The statutes and regulations compelling employers to pay overtime were designed not only to benefit individual workers but also to serve a fundamental societal goal: reducing unemployment by giving the employer a disincentive to concentrate work in a few overburdened hands and an incentive to instead hire additional employees. Especially in today's economic climate, the importance of spreading available work to reduce unemployment cannot be overestimated.

2.      Maximus was awarded the contract to interface with the public regarding Health Insurance Exchanges under the Affordable Care Act, and based upon information and belief, has multiple call centers in the United States, including one in Boise, Idaho and one in Brownsville,

**COLLECTIVE ACTION COMPLAINT - 2**

Texas, dedicated to this specific contract relating to the Affordable Care Act ("Affordable Care Act contract").

3.        This case arises out of Defendant Maximus's systemic, company-wide unlawful treatment of Plaintiffs and hundreds, if not thousands, of similarly-situated Trainers and First-Level Supervisors it wrongfully classified as *exempt* from overtime compensation under the federal Fair Labor Standards Act ("FLSA") and the equivalent wage and hour protections incorporated into the law.

4.        There are two categories of Plaintiffs in this case: Trainers and First-Level Supervisors.  Trainers for Maximus are tasked with reviewing and using company materials to train incoming Maximus call center agents to answer calls relating to the Affordable Care Act. First-Level Supervisors are tasked with the responsibility to monitor a team of approximately 14 call center agents who take calls from the public relating to the Affordable Care Act, which includes monitoring their phone calls, reporting employee problems to higher level managers, and checking agents' timesheets, and coaching agents on customer service issues.

5.        Defendant employs a multi-tiered management structure. Plaintiffs, including Trainers and First-Level Supervisors and those similarly situated to Plaintiffs are at the bottom levels of the multi-tiered management structure, whose essential role is to train or supervise Maximus's newly-hired customer service agents who receive incoming calls from the public relating to Health Insurance Exchanges under the Affordable Care Act.  All Plaintiffs and the members of the two proposed sub-classes, i.e. Trainers and First-Level Supervisors, have very little authority to make employment-related decisions. Further, they are tightly controlled by Maximus policy and by their managers, they do not exercise discretion or independent judgment as to matters of significance, and their job duties are not directly related to the Company's

**COLLECTIVE ACTION COMPLAINT - 3**

management policies or general business operations.

6.      Defendant has deliberately violated federal wage and hour protections in order to extract extensive hours from the company's Trainers and First-Level Supervisors, without paying time-and-a-half overtime pay as required by law.

7.      From about August of 2013 forward, Plaintiffs were usually required to work between 50 to 60 hours on average per week.   They were required to be at work from approximately 5:00 am and not leave from between 3:00pm to 5:00pm, even if there was little or no work to be done.

8.      Maximus management has violated the FLSA by, among many other things: intentionally scheduling work meetings for Plaintiffs to begin at the time when they were supposed to be finishing their shift, thereby further extending their shifts without any additional pay; requiring Plaintiffs to work up to 24 hours over the weekend before Christmas, among other times, without any additional pay and under the threat of being terminated if they did not comply; and refusing to pay plaintiffs for time that they were out of the Maximus call center as a result of a mandatory building evacuation.

9.      Plaintiffs sue on behalf of themselves and other similarly situated Trainers and First-Level Supervisors who worked for Maximus and who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U .S.C. §§ 201 *et seq.,* specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b). This action claims that Defendant has violated the wage-and -hour provisions of the FLSA by depriving Plaintiffs, as well as others similarly situated to Plaintiffs, of their lawful overtime wages.

10.     Since at least August of 2013, Defendant has willfully committed widespread violations of the FLSA by forcing similarly-situated Trainers to work off-the-clock without

**COLLECTIVE ACTION COMPLAINT - 4**

compensation.  The off-the-clock sub-class is the following:

> All Trainers employed by Maximus from on or around August of 2013, including but not limited to those located at Defendant's Idaho call centers, and thereafter who were directed by their Maximus management to indicate in their time keeping system that they were working only eight (8) hours per day when in fact they were working substantially more.  Furthermore, Trainers have been required by Maximus management to skip their lunch and other breaks throughout their work-day.

11.     Since at least August of 2013, Defendant has willfully committed widespread violations of the FLSA by forcing similarly-situated First-Level Supervisors to work off-the-clock without compensation.  The off-the-clock sub-class is the following:

> All First-Level Supervisors employed by Maximus from on or around August 2013, including but not limited to those located at Defendant's Idaho call centers, and thereafter who were directed by their Maximus Management to indicate in their time keeping system that they were working only eight (8) hours per day when in fact they were working substantially more. Furthermore, First-Level Supervisors have been required by Maximus management to skip their lunch and other breaks throughout their work-day.

12.     Since at least July of 2013, Defendant has willfully committed widespread violations of the FLSA by misclassifying all similarly-situated Trainers as salaried *exempt* employees regardless of their actual duties and responsibilities. In actuality, the members of the Plaintiff collective class are *not exempt* from the wage and hour laws. The misclassification sub-class is the following:

> All Trainers employed by Maximus from on or around July of 2013 and thereafter who were assigned to train incoming Maximus call-center employees and who were classified by the company as exempt employees under the FLSA.

13.     Since at least August of 2013, Defendant has willfully committed widespread violations of the FLSA by misclassifying all similarly-situated First-Level Supervisors as salaried *exempt* employees regardless of their actual duties and responsibilities. In actuality, the members of the Plaintiff collective class are *not exempt* from the wage and hour laws. The

**COLLECTIVE ACTION COMPLAINT - 5**

misclassification sub-class is the following:

> All First-Level Supervisors employed by Maximus from on or around August of
> 2013 and thereafter who were assigned to supervise a team of approximately 14 call
> center employees responsible for handling telephone calls on behalf of Maximus,
> and who were classified by the company as exempt employees under the FLSA.

14.    Accordingly, Defendant is liable for failing to pay these employees for all hours worked in excess of 40 hours per week at a rate of one-and-one-half times their regular rate of pay.

15.    Additionally, Plaintiffs have been specifically instructed by Maximus management to document that they worked eight (8) hours per day, despite working substantially more than eight (8) hours per day.

16.    Plaintiffs and all similarly situated employees, including Trainers and First-Level Supervisors in Maximus's Boise and Brownsville Affordable Care Act call centers, as well as Maximus's other Affordable Care Act contract call centers, who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## II.  JURISDICTION AND VENUE

17.    This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, because the action arises under a federal statute, 29 U.S.C. § 216(b).

18.    Defendant is subject to personal jurisdiction because this case arises from Defendant's wrongful conduct in Idaho, where Maximus maintains a call center and employs a substantial portion of the proposed sub-classes (i.e., sub-class of Trainers and sub-class of First Level Supervisors).

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events and the omissions giving rise to Plaintiffs' claims occurred in this

**COLLECTIVE ACTION COMPLAINT - 6**

District. Additionally, Defendant is deemed to reside in this District under 1391(c) because it is subject to personal jurisdiction in the District.

20.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES

#### A.     The Representative Plaintiffs

21.     Plaintiff Jeannette Rodriguez-Guzman ("Rodriguez-Guzman") resides in Idaho. Rodriguez-Guzman has worked for Maximus, in Boise, Idaho, as a Trainer since July of 2013.

22.     Plaintiff Yvette Norton ("Norton") resides in Idaho. Norton has worked as a First-Level Supervisor for Maximus, in Boise, Idaho, since August of 2013.

23.     Plaintiff Kelly Barker ("Barker") resides in Idaho.  Barker has worked as a Trainer for Maximus, in Boise, Idaho, since July of 2013.

24.     Plaintiff Brad Epperly ("Epperly") resides in Idaho.  Epperly has worked as a Trainer for Maximus, in Boise, Idaho, since July of 2013.

25.     Plaintiff Mark Zumwalt ("Zumwalt") resides in Idaho. Zumwalt has worked as a Trainer for Maximus, in Boise, Idaho, since July of 2013.

26.     Plaintiff Stephanie Jones ("Jones") resides in Idaho.  Jones has worked as a Trainer for Maximus, in Boise, Idaho, since July of 2013.

27.     Plaintiff Joseph Bell ("Bell") resides in Idaho.  Bell has worked as a Trainer for Maximus, in Boise, Idaho, since July of 2013.

28.     Plaintiff Nancy Richards ("Richards") resides in Idaho.  Richards has worked as a Trainer for Maximus, in Boise, Idaho, since July of 2013.

29.     Plaintiff Kelley Knowles ("Knowles") resides in Idaho.  Knowles has worked as

**COLLECTIVE ACTION COMPLAINT - 7**

a Trainer for Maximus, in Boise, Idaho, since July of 2013.

30.      Based upon information and belief, there are at least 30 similarly situated Trainers that are, or have been, employed by Maximus at its call center in Boise, Idaho.  Based upon information and belief, there are similarly situated Trainers employed by Maximus at its call center in Brownsville, Texas and other Affordable Care Act call centers in the United States. Plaintiffs request that all similarly situated Trainers be afforded the opportunity to become members of a sub-class.

31.      Based upon information and belief, there are approximately 120 similarly situated First-Level Supervisors that are, or have been, employed by Maximus at its call center in Boise, Idaho.  Based upon information and belief, there are similarly situated First-Level Supervisors employed by Maximus at its call center in Brownsville, Texas and other Affordable Care Act call centers in the United States. Plaintiffs request that all similarly situated First-Level Supervisors be afforded the opportunity to become members of a sub-class.

**B.      Defendant Maximus**

32.      Maximus is and at all times material hereto was, a corporation organized under the laws of the state of Virginia with its headquarters and principal place of business in Reston, Virginia.  Maximus operates call centers in various global locations including one in Boise, Idaho with a capacity of approximately 1800 employees. Maximus has operated the Boise call center since approximately August of 2013 as a part of an approximately $100,000,000.00 contract to take calls from individuals from various parts of the United States using health insurance exchanges under the Affordable Care Act contract.

33.      Since operations began at the Boise call center, First-Level Supervisors have had the same set of basic duties and responsibilities, and have been subject to common policies,

**COLLECTIVE ACTION COMPLAINT - 8**

practices, and procedures–including overtime policies–which emanate from Maximus corporate management. These policies include Defendant's uniform expectation that Plaintiffs and the class members routinely work off-the-clock in order to complete their duties each day. Furthermore, Defendant uniformly classified Plaintiffs and class members as *exempt* employees and thus did not compensate them for any time worked in excess of 40 hours per week.

34.     On January 7, 2014, as a result of multiple complaints by some Plaintiffs, Maximus re-classified Trainers from *exempt* to *non-exempt* employees and began paying them hourly, which for most Trainers constituted a reduction in pay. Otherwise, since operations began at the Boise call center, Trainers have had the same set of basic duties and responsibilities, and have been subject to common policies, practices, and procedures-including overtime policies–which emanate from Maximus corporate management. These policies include Defendant's uniform expectation that Plaintiffs and the class members routinely work off-the-clock in order to complete their duties each day. Furthermore, Defendant uniformly classified Plaintiffs and class members as *exempt* employees and thus did not compensate them for any time worked in excess of 40 hours per week.

35.     The overtime wage provisions set forth in § 206 and § 207 of the FLSA, apply to Defendant. The two proposed sub-class members' jobs are not positions involving work that falls within any exception or exemption set forth in 29 U.S.C. § 213(a)( I ).

36.     Defendant is an enterprise engaged in interstate commerce, with an annual revenue exceeding $500,000.

### IV. PLAINTIFFS' FACTUAL ALLEGATIONS

A.     **Trainers Rodriguez-Guzman, Barker, Epperly, Zumwalt, Jones, Bell, Richards, Knowles, and Rivas (Collectively referred to as "Trainers")**

**COLLECTIVE ACTION COMPLAINT - 9**

37.      The Trainers began working for Maximus in Boise, Idaho as Affordable Care Act call center Trainers in July of 2013, shortly before Maximus opened the Boise Affordable Care Act call center. Maximus classified Trainers' position as *exempt* and thus they were not paid overtime wages. As of January 7, 2013, Maximus re-classified Trainers as non-exempt, and gave them all an hourly wage of $18.36 per hour.  Prior to the re-classification, Trainer's salaries ranged from less than $38,000 per year to more than $42,500 per year.  The hourly wage represented a pay cut for most of the Trainers.[1]

38.      The Trainers' jobs were to train newly hired call-center employees ("customer service agents") to take telephone calls relating to the Affordable Care Act contract. At times Maximus required Trainers to do clerical work, such as copying and organizing documents. At other times, the Trainers were not given any job to do, although they were required to be physically present at work.

39.      The Trainers do not have a supervisory role over customer service agents.

40.      The Trainers do not have the authority to hire, fire, or promote customer service agents, determine their pay rates or benefits, or give raises. The Trainers are unable to make other personnel decisions.

41.      The Trainers do not have the authority to decide whether or not a customer service agent should be disciplined for an infraction or what the discipline will be. Disciplinary decisions are made by Trainers' superiors and/or dictated by strict company policies. Trainers' recommendations regarding employee discipline are given little, if any, weight.

42.      The Trainers do not determine the training materials or the equipment to be

---

[1] When Maximus changed Trainer's status from exempt to non-exempt, Trainers paid vacation leave was reduced from 15 days per year to 10 days per year in addition to a reduction of health care benefits.

**COLLECTIVE ACTION COMPLAINT - 10**

used by Maximus's training trainees. Rather, this material is provided by Maximus.

43.     Much of the Trainers' time at work is spent doing basic clerical tasks.

44.     The Trainers do not determine what work is to be done by their trainees, or on what time frame.  These are determined by company policy.

45.     The Trainers' managers frequently scheduled mandatory meetings to begin at the time that the Trainers were scheduled to be off of work, thereby extending their workdays.

46.     Since approximately August of 2013, Defendant paid the Trainers, as well as all other similarly situated employees as *exempt* from the overtime requirements of the FLSA.

47.     Prior to January 7, 2014, the Trainers routinely work more than 8 hours a day and 40 hours per week for Maximus. They regularly work 10 to 12 hour days at Maximus, or more, as well as periodic weekend assignments. The Trainers work approximately 50 to 60 hours per week on an average week without additional compensation.

48.     Trainers are routinely expected to take a shortened lunch and skip their breaks without compensation.

49.     Defendant has misclassified the Trainers, and all other similarly situated Trainers as *exempt*, despite their performance of primarily *non-exempt* duties.

50.     Despite the Trainer's classification as *exempt* employees, Maximus required that Trainers fill in time sheets that indicate that they have worked only eight (8) hours per day, when in reality Trainers were working substantially more than eight (8) hours per day.

51.     The Trainers have been required to "clock out" of work when they were required to be at work, i.e. the Trainers were required to "clock out" and not get paid while waiting outside the Maximus job-site during a bomb-threat evacuation.

52.     As *exempt* classified employees, Trainers did not receive additional

**COLLECTIVE ACTION COMPLAINT - 11**

compensation for working overtime.

**B.**   **First-Level Supervisor, Yvette Norton ("First-Level Supervisors")**

53.      First-Level Supervisors are classified as *exempt* by Maximus and thus they are not paid overtime wages.

54.      The First-Level Supervisors' job duties include: monitoring customer service agents who are taking calls relating to the Affordable Care Act contract, relaying information between Maximus and the customer service agents, clerical tasks and paperwork, and relaying information about the customer service agents to the company pursuant to the company's policies.

55.      First-Level Supervisors do not exercise discretion or independent judgment.

56.      Much of the First-Level Supervisors time at work is spent on basic clerical tasks, such as reviewing and submitting employee timesheets.

57.      First-Level Supervisors do not determine what work is to be done by the customer service agents or on what time frame. Work assignments are generated by Maximus and given to customer service agents by the company. First Level Supervisors have only a minor role in readjusting work assignments, which does not require the exercise of significant discretion.

58.      When Maximus requires its customer service agents to work overtime hours, First-Level Supervisors do not have the authority to determine which agent will work the additional hours. Higher-level managers at Maximus make those decisions.

59.      First-Level Supervisors do not have the authority to hire, fire, or promote customer service agents, determine their pay rates or benefits, or give raises.

60.      First-Level Supervisors do not have the authority to decide whether or not a

**COLLECTIVE ACTION COMPLAINT - 12**

customer service agent should be disciplined for an infraction or what the discipline will be. Disciplinary decisions are made by the First-Level Supervisors' superiors and/or dictated by strict company policies. First-Level Supervisors recommendations are given little, if any, weight.

61.　　　First-Level Supervisors do not determine the equipment to be used by the customer service agents. Materials and equipment are provided directly by the company.

62.　　　Since approximately August of 2013, Defendant has treated First-Level Supervisors and all other similarly situated First-Level Supervisors as exempt from the overtime requirements of the FLSA.

63.　　　First-Level Supervisors routinely work more than 8 hours a day and 40 hours per week for Defendant. First-Level Supervisors regularly work 10 to 12 hour days at Maximus, or more, as well as periodic weekend assignments.

64.　　　Furthermore, First-Level Supervisors are frequently expected to take a shortened lunch and skip their breaks.

65.　　　On average, First-Level Supervisors work at least 50 to 60 hours per week on a regular week.

66.　　　Defendant has misclassified First-Level Supervisors and all other similarly situated First-Level Supervisors as *exempt*, despite their performance of regular *non-exempt* duties.

67.　　　First-Level Supervisors have been required to "clock out" of work when they were required to be at work, i.e. clocking out of work, but remaining at the job-site to continue working at the direction of Maximus Management.

68.　　　Despite First-Level Supervisors' classification as *exempt* employees, Maximus

**COLLECTIVE ACTION COMPLAINT - 13**

requires that First-Level Supervisors fill in time sheets that indicate that they have worked only eight (8) hours per day, when in reality First-Level Supervisors were working substantially more than eight (8) hours per day.

## V.  CLASS-WIDE FACTUAL ALLEGATIONS

### A.  Plaintiffs and the sub-class members are not Managers

69.        Although Plaintiffs and the sub-class members do not have managerial duties or authority. Plaintiffs and the sub-class members are merely workers who are informed of policies and decisions passed down by Maximus shortly before their general announcement to the customer service agents.

70.        Over the relevant sub-class period, from approximately August of 2013 to the present, Trainers and First-Level Supervisors and other sub-class members have essentially acted merely as intermediaries, conveying the information given to them by Maximus to the customer service agents, and conveying incidences reported by the customer service agents to higher levels of management.

71.        Although Trainers and First-Level Supervisors and the sub-class members have the job duties and responsibilities of regular non-exempt employees of the Company, Defendant attempts to characterize them as management for purposes of federal overtime laws.

### B.       Plaintiffs and the sub-class members perform routine, standardized duties

72.        Regardless of the department or area in which they work, Trainers and First-Level Supervisors and the sub-class members perform the same basic functions each day: relaying company policies and directives to the customer service agents, handing out pre-determined work schedules, checking and filing time sheets and other paperwork, and

**COLLECTIVE ACTION COMPLAINT - 14**

performing clerical tasks.

73.        Trainers and First-Level Supervisors, and the sub-class members essentially act as a liaison between management and the agents and, given the constraints placed upon them by company policy and by their bosses, do not perform in a traditional supervisory role.

74.        Trainers and First-Level Supervisors, and the sub-class members do not need technical expertise or experience in the areas to which they are assigned and can easily be shifted between different lower-level positions at Maximus.

75.        Defendant provides forms, guidelines, and timeframes which dictate how Plaintiffs and the sub-class members do their respective jobs so that all Trainers perform the job in exactly the same way and are virtually interchangeable, and all First-Level Supervisors perform the job in exactly the same way and are virtually interchangeable.

C.        **Plaintiffs and the sub-class members do not exercise discretion or independent judgment regarding matters of significance**

76.        Trainers and First-Level Supervisors, and the sub-class members' duties do not require the exercise of discretion or independent judgment on any than more than an occasional basis. Plaintiffs and the sub-class members have very little decision-making authority and none in matters of significance.

77.        Trainers and First-Level Supervisors, and the sub-class members' duties do not include an opportunity to exercise experience and judgment in selecting alternative options.

78.        Trainers and First-Level Supervisors, and the sub-class members' duties do not include an opportunity for independent choice free from immediate supervision.

79.        Trainers and First-Level Supervisors, and the sub-class members' duties do not include an exercise of final authority.

D.        **Plaintiffs and the sub-class members have no authority over**

**COLLECTIVE ACTION COMPLAINT - 15**

**hiring, firing, discipline, and other personnel decisions
involving their agents**

80.     Trainers and First-Level Supervisors, and the sub-class members are not responsible for employment or personnel decisions or policies. They have no authority over hiring, firing, advancement, promotion, setting pay rates or benefits, or granting pay raises or any other change of employee status. Nor do they have the weight of authority necessary to influence these matters in a substantial manner. They have no role in determining staffing levels, are not present at employee interviews, and do not select customer service agents to train or for their teams.

81.     Trainers and First-Level Supervisors, and the sub-class members have a strictly limited role in disciplining agents and are rarely able to do anything without authorization or express direction from their supervisors. All disciplinary decisions are made by Plaintiffs' and the sub-class members' supervisors and/or dictated by Company policy from which they are not permitted to deviate.

82.     Trainers and First-Level Supervisors, and the sub-class members do not determine whether to discipline an agent or to what extent.  Their wishes and recommendations regarding appropriate disciplinary measures are infrequently solicited and commonly disregarded.  Essentially, their role in a given disciplinary situation is to relate what happened to their superiors.

**E.     Plaintiffs and the sub-class members primarily or exclusively
perform non-exempt duties**

83.     Trainers and First-Level Supervisors, and the sub-class members' primary duties do not include the management of the enterprises in which they are employed or that of a customarily recognized department within such enterprise.

**COLLECTIVE ACTION COMPLAINT - 16**

84.     Trainers and First-Level Supervisors, and the sub-class members do not have input into Company strategy or business decisions. Nor do they have any role in financial or marketing decisions. Company policies are dictated by upper management.

85.     Trainers and First-Level Supervisors, and the sub-class members' duties do not allow them to customarily and regularly direct the work of others. While ostensibly acting in a supervisory or training role over their teams of customer service agents, Plaintiffs and the sub-class members are unable to exercise supervisory authority without approval from their managers and serve in a primarily clerical function.

86.     Trainers and First-Level Supervisors and the sub-class members do not plan or direct the work of their agents or determine techniques to be used on the job. First-Level Supervisors have no role in distributing or assigning work to the customer service agents, as the Company determines the customer service agents' job responsibilities. Trainers have no role in distributing or assigning work to the training customer service agents other than that which the Company dictates.

87.     Trainers and First-Level Supervisors and the sub-class members do not exercise significant judgment or discretion in performing routine tasks.

88.     Trainers and First-Level Supervisors, and the sub-class members have a limited role in evaluating their customer service agents' performance and productivity. Customer service agents' performance and productivity are determined by the Company in which Plaintiffs and the sub-class members have little to no input.  Based on this information, the Plaintiffs and the sub-class members are often directly instructed by their Managers to speak to particular customer service agents or initiate specific discipline.

89.     Any discipline that Plaintiffs and the sub-class members attempt to institute

**COLLECTIVE ACTION COMPLAINT - 17**

may be reversed from higher-levels of management without explanation - undermining any authority they have with their customer service agents.

90.        Trainers and First-Level Supervisors and the sub-class members have no authority over their customer service agents' work hours, which are set by the Company. Plaintiffs and the sub-class members do not determine when overtime is available, nor do they select which agents will work overtime.

91.        Trainers and First-Level Supervisors and the sub-class members do not handle employee grievances other than to forward them up the management chain for decision-making. Plaintiffs and the sub-class members have no role in the grievance process and do not make any related decisions.  They must follow the decisions made by their superiors.

92.        Trainers and other similarly situated employees have little discretion over which types of materials, supplies, or tools are to be used on the job by trainees, and Trainers do not control the flow and distribution of these items.

93.        First-Level Supervisors do not have discretion over which types of materials, supplies, or tools are to be used on the job and do not control the flow and distribution of these items.

94.        Trainers and First-Level Supervisors and the sub-class members have no role in formulating Company safety guidelines, policies, or procedures, which are set by management and/or the safety department.

95.        Trainers and First-Level Supervisors and sub-class members have no role in investigating or resolving customer complaints regarding customer service representatives.

**F.        Plaintiffs and the sub-class members all work excessive hours without additional compensation**

COLLECTIVE ACTION COMPLAINT - 18

96.       Trainers and First-Level Supervisors and the sub-class members are currently paid a salary on the basis of a 40 hour work week. At the direction of Maximus, Plaintiffs and the sub-class members keep time sheets that incorrectly indicate that each Plaintiff works no more than 8 hours a day and no more than 40 hours a week.

97.       Trainers and First-Level Supervisors, and the sub-class members are not paid any additional compensation or overtime for hours over 40 that they work in a given week. However, Maximus has reduced the pay of Plaintiffs who work for less than 8 hours per day or when they are sick, or otherwise absent, and cannot attend work.

98.       Trainers and First-Level Supervisors, and the sub-class members work in excess of 40 hours per week on a regular, weekly basis. First-Level Supervisors and Trainers generally work no less than 45 hours per week and often are required to work between approximately 50-70 hours per week.

## VI.   COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

99.       Since at least August of 2013 in Boise, Idaho, and prior at other Maximus call centers in the United States, Defendant Maximus has misclassified non-exempt First-Level Supervisors and Trainers as salaried "exempt" employees.

100.       Defendant has intentionally and repeatedly and improperly misclassifed *non-exempt* Trainers and First-Level Supervisors as salaried *exempt* employees.

101.       Plaintiffs bring their off-the-clock claim on behalf of the following category of similarly-situated individuals who worked for Defendant at any time from three years prior to the filing of this Complaint to entry of judgment in this case:

> All First-Level Supervisors employed by Maximus from approximately August of 2013 and thereafter who were assigned customer service agents as direct reports and who were classified by the company as non-exempt employees under the FLSA, as well as all similarly situated First-Level Supervisors employed at other locations;

**COLLECTIVE ACTION COMPLAINT - 19**

AND

All Trainers employed by Maximus from approximately July of 2013 and thereafter who were assigned to train new customer service agents and who were classified by the company as non-exempt employees under the FLSA, as well as all similarly situated Trainers employed at other Maximus locations.

102.    Plaintiffs bring their misclassification claim on behalf of the following category of similarly-situated individuals who worked for Defendant at any time from three years prior to the filing of this Complaint to entry of judgment in this case:

All First-Level Supervisors employed by Maximus from approximately August of 2013 and thereafter who were assigned customer service agents as direct reports and who were classified by the company as exempt employees under the FLSA, as well as all similarly situated First-Level Supervisors employed at other Maximus locations;

AND

All Trainers employed by Maximus from approximately July of 2013 and thereafter who were assigned to train customer service agents and who were classified by the company as exempt employees under the FLSA, as well as all similarly situated Trianers employed at other Maximus locations.

103.    Defendant is liable under the FLSA for failing to properly compensate Plaintiffs, and as such, notice should be sent to past and present First-Level Supervisors and Trainers in Boise, Idaho; Brownsville, Texas; and other Maximus facilities that employ similarly situated Trainers and First-Level Supervisors. There are numerous similarly-situated current and former First-Level Supervisors and Trainers who have been forced to work off-the-clock without compensation and/or misclassified in violation of the FLSA. Each of these employees would benefit from the issuance of a court supervised Notice of the present lawsuit and the opportunity to join this action. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

**COLLECTIVE ACTION COMPLAINT - 20**

## FIRST CLAIM FOR RELIEF (FLSA)
### FAILURE TO PAY REQUIRED OVERTIME
### AND KEEP ACCURATE RECORDS, COLLECTIVELY
### (29 U.S.C. §§ 207 and 211(c))
### OFF-THE-CLOCK

104.     Plaintiffs allege and incorporate by reference the preceding paragraphs of this complaint as if fully alleged herein.

105.     At all relevant times, Defendant has been and continue to be an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has had gross operating revenues far in excess of $500,000.

106.     At all relevant times, Maximus has employed and continues to employ First-Level Supervisors as "employee(s)" within the meaning of the FLSA.

107.     At all relevant times, Maximus has employed and continues to employ Trainers as "employee(s)" within the meaning of the FLSA.

108.     Maximus has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by requiring Plaintiffs and similarly-situated First-Level Supervisors and Trainers to work overtime off-the-clock and thereby failing and refusing to pay them the proper hourly wage compensation in accordance with § 206 and § 207 of the FLSA.

109.     Because Defendant willfully violated the FLSA by requiring Plaintiffs and the sub-class members to work off-the-clock without compensation, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

110.     As a result of Defendant's violations of the FLSA, Plaintiffs, as well as all others similarly situated, have suffered damages by being denied overtime wages in accordance with § 206 and § 207 of the FLSA.

**COLLECTIVE ACTION COMPLAINT - 21**

111.     Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated present and former First-Level Supervisors.

112.     Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated present and former Trainers.

113.     At all relevant times, Defendant willfully, regularly, and  repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by the FLSA, 29 U .S.C. § 211(c), with respect to its level-one Supervisors and Trainers. Through this course of conduct, Defendant has deprived Plaintiffs and the Sub-class Members of the records necessary to calculate with precision the overtime compensation due to them.

114.     As a result of Defendant's unlawful acts, Plaintiffs and all similarly situated employees have been deprived of overtime compensation in amounts to be determined at trial, and are accordingly entitled to recovery of such amounts, liquidated (double) damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b) as well as any other legal and equitable relief the Court deems just and proper.

**SECOND CLAIM FOR RELIEF (FLSA)**
**FAILURE TO PAY REQUIRED OVERTIME**
**AND KEEP ACCURATE RECORDS, COLLECTIVELY**
**(29 U.S.C. §§ 207 and 211(c))**
**MISCLASSIFICATION**

115.     Plaintiffs allege and incorporate by reference the preceding paragraphs of this complaint as if fully alleged herein.

116.     Defendant has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by misclassifying First-Level Supervisors and similarly situated employees as "exempt" employees, and thereby failing and

**COLLECTIVE ACTION COMPLAINT - 22**

refusing to pay them the proper hourly wage compensation in accordance with § 206 and § 207 of the FLSA.

117.    Defendant has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by misclassifying the Trainers and similarly situated employees as "exempt," and thereby failing and refusing to pay them the proper hourly wage compensation in accordance with § 206 and § 207 of the FLSA.

118.    Because Defendant willfully violated the FLSA by misclassifying Plaintiffs as exempt employees, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

119.    Plaintiffs and the sub-class members are not employed in a "bona fide executive, administrative, or professional capacity" pursuant to 29 U.S.C. § 213(a)(l) and corresponding regulations.   Plaintiffs and the sub-class members are not subject to any other exemptions set forth in the FLSA or administrative regulations.

120.    As a result of Defendant' s violations of the FLSA, Plaintiffs, as well as all others similarly situated, have suffered damages by being denied overtime wages in accordance with § 206 and § 207 of the FLSA.

121.    Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated present and former First-Level supervisors.

122.    Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated present and former Trainers.

123.    At all relevant times, Defendant willfully, regularly, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by the FLSA, 29

**COLLECTIVE ACTION COMPLAINT - 23**

U.S.C. § 211(c), with respect to its First-Level Supervisors. Through this course of conduct, Defendant has deprived Plaintiffs and the Sub-class Members of the records necessary to calculate with precision the overtime compensation due to them.

124.     At all relevant times, Defendant willfully, regularly, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by the FLSA, 29 U.S.C. § 211(c), with respect to its Trainers. Through this course of conduct, Defendant has deprived Plaintiffs and the Sub-class Members of the records necessary to calculate with precision the overtime compensation due to them.

125.     As a result of Defendant's unlawful acts, Plaintiffs and all similarly situated current and former First-Level Supervisors have been deprived of overtime compensation in amounts to be determined at trial, and are accordingly entitled to recovery of such amounts, liquidated (double) damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b) as well as any other legal and equitable relief the Court deems just and proper.

126.     As a result of Defendant's unlawful acts, Plaintiffs and all similarly situated current and former Trainers have been deprived of overtime compensation in amounts to be determined at trial, and are accordingly entitled to recovery of such amounts, liquidated (double) damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b) as well as any other legal and equitable relief the Court deems just and proper.

### THIRD CLAIM FOR RELIEF (FLSA)
**RETALIATION (BROUGHT INDIVIDUALLY BY Plaintiffs' Norton, Rodriguez-Guzman, Barker, Knowles, Epperly, Jones, Bell, and Richards)**
**(29 U.S.C. § 215 (a)(3))**
**RETALIATION**

127.     Plaintiffs allege and incorporate by reference the preceding paragraphs of this

**COLLECTIVE ACTION COMPLAINT - 24**

complaint as if fully alleged herein.

128.      On or around October 17, 2013, among other times, Barker questioned Maximus's Human Resource Department (a/k/a "Human Capital") about the requirement to falsely document timesheets and the designation of Trainers as *exempt* employees.

129.      On or around November 12, 2013, Rodriguez-Guzman made a complaint to Helene Fisher, the Vice President of Maximus's Affordable Care Act project in Brownsville, Texas and Boise, Idaho sites, and complained about the excessive amount of work being required of all of the Trainers, including herself, as well as the requirement that Trainers document that they worked only 8 hours per day, as opposed to the actual hours per day they work.

130.      On or around December 23, 2013, among other times, Norton sent an email complaining to Maximus Management, including Maximus CEO Richard Montoni, Vice President Helene Fisher, Director Michelle Paiz, Site Manager Robert Giuoco, and Norton's direct manager Leena Thakkar about her inadequate pay based upon the hours Norton was required to work overtime.

131.      As a direct and proximate result of the complaints and inquiries by Rodriguez-Guzman and Barker, among others, to Maximus management, on or around January 7, 2014, Maximus re-classified its Trainers from *exempt* to *non-exempt*, and by doing so, cut and reduced Plaintiffs Rodriguez-Guzman, Barker, Knowles, Epperly, Bell, and Richard's annual amount earned to $38,188.00.

132.      As a direct and proximate result of the complaints and inquiries made by Rodriguez-Guzman and Barker, among others, on or around January 7, 2014, Maximus re-classified its Trainers from exempt to non-exempt, and by doing so, among other things, Maximus offered only Health Insurance options to Plaintiffs Rodriguez-Guzman, Barker,

**COLLECTIVE ACTION COMPLAINT - 25**

Knowles, Epperly, Jones, Bell, and Richards, that were more expensive for Dependents of than the Health Insurance options they were previously offered, with a substantial decrease in coverage.

133.     As a direct and proximate result of the complaints by Rodriguez Guzman and Barker to Maximus management, among others, on or around January 7, 2014, Maximus re-classified its Trainers from exempt to non-exempt, and by doing so, reduced Plaintiffs Norton, Rodriguez-Guzman, Barker, Knowles, Epperly, Jones, Bell, Richards, and Zumwalt paid vacation from fifteen (15) days per year to ten (10) days per year.

134.     As a direct and proximate result of the complaints by Yvette Norton, her direct manager Leena Thakkar subjected her to a hostile work environment by, among other things: giving her two (2) unmeritorious written warnings and one (1) unmeritorious verbal warning; calling her a "bitch" in front of other First-Level Supervisors; refusing to approve Norton's proposed disciplinary actions against customer service agents; and refusing to coach Norton on issues that Norton requested coaching for, as is common between First-Level Supervisors and their managers.

135.     Defendant's retaliatory actions, as described above, against Rodriguez-Guzman were intentional, and with malice.

136.     Defendant's retaliatory actions, as described above, against Barker were intentional, and with malice.

137.     Defendant's retaliatory actions, as described above, against Norton were intentional, and with malice.

138.     Defendant's retaliatory actions, as described above, against Knowles, Epperly, Jones, Bell, and Richard's were intentional, and with malice.

**COLLECTIVE ACTION COMPLAINT - 26**

## PRAYER FOR RELIEF

**WHEREFORE ,** Plaintiffs, individually and on behalf of all other similarly-situated persons, pray for the following relief:

A.  That the Court determine that this action may be maintained as a collective action under 29 U.S.C. § 216(b) and  as a class action  under the Federal Rules of Civil Procedure Rule 23;

B.  That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of Court-supervised Notice, been employed by Maximus as a First-Level Supervisor assigned a team of customer service agents as direct reports. Such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were (1) forced to work off-the-clock without compensation and/or (2) misclassified as exempt employees, whereas their primary work duties entail tasks commonly performed by non-exempt, hourly employees.

C.  That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of Court-supervised Notice, been employed by Maximus as a Trainers assigned to train newly employed Maximus customer service agents. Such persons shall be informed that this civil action has been

**COLLECTIVE ACTION COMPLAINT - 27**

filed, of the nature of the action, and of their right to join this lawsuit if they believe they were (1) forced to work off-the-clock without compensation and/or (2) misclassified as exempt employees, whereas their primary work duties entail tasks commonly performed by non-exempt, hourly employees.

D. That the Court find that Maximus has violated the overtime provisions of the FLSA, 29 U.S.C. § 207 as to Plaintiffs and the proposed sub-classes;

E. That the Court find that Maximus has violated the record -keeping provisions of the FLSA , 29 U .S.C. § 211(c) as to Plaintiffs and the proposed sub-classes;

F. That the Court find that Maximus has violated the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3).

G. That the Court find that Maximus's wage and hour violations as described have been willful;

H. That the Court find that Maximus's retaliation violations have been intentional, and with malice.

I. That the Court award Plaintiff's punitive damages to the employees named in the Third Cause of Action as a result of Maximus's willful and wanton retaliation in violation of 29 U.S.C. §215(a)(3).

J. That the Court award to Plaintiffs and the Plaintiff Class compensatory, liquidated, and punititive damages in excess of $5,000,000.00 for unpaid overtime, including interest, and statutory penalties subject to proof at trial pursuant to 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

K. That the Court enjoin Defendant to cease and desist from its violations of the FLSA

**COLLECTIVE ACTION COMPLAINT - 28**

described herein and to comply with the FLSA;

L.  That Plaintiffs and the sub-classes be awarded reasonable attorneys' fees and costs

pursuant to FLSA 29 U.S.C. § 216(b) and/or other applicable law; and

M.  That the Court award such other and further relief as this Court may deem appropriate.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Respectfully submitted this _24ᵗʰ_ day of January, 2014.


Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com


Jeremiah M. Hudson, ISB No. 8364
FISHER RAINEY HUDSON
910 West Main Street, Suite 254
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 297-2689
Email: jeremiah@frhtriallawyers.com

*Counsel for Plaintiffs and the Proposed
Sub-Classes*

**COLLECTIVE ACTION COMPLAINT - 29**