Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com

Jeremiah M. Hudson, ISB No. 8364
Allison Blackman, ISB No. 8686
FISHER RAINEY HUDSON
950 West Bannock Street, Suite 630
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
Email: jeremiah@frhtriallawyers.com
         allison@frhtriallawyers.com

*Attorneys for Plaintiffs*
*and the Putative Collective Action Members*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YVETTE NORTON, JEANNETTE RODRIGUEZ-GUZMAN, KELLY BARKER, JOSEPH BELL, BRAD EPPERLY, STEPHANIE JONES, KATHERINE KELLEY KNOWLES, NANCY RICHARDS, and MARK ZUMWALT, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>MAXIMUS INC.,<br><br>*Defendant.* | Civil Action No. 1:14-cv-00030<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT |

## I.  INTRODUCTION

On January 24, 2014 Plaintiffs, Trainers and First Level Supervisors, employed by Maximus Inc. ("Maximus"), filed a Complaint on behalf of themselves and other similarly situated employees, who elected to opt in to the collection action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. While there are two-subclasses in this action, Trainers and Supervisors, for the purposes of this Motion, Plaintiffs are only requesting approval of the Proposed Partial Settlement on behalf of Trainers. There are presently 33 Boise Trainers and 13 Brownsville Trainers in the class. The Trainers claimed that Maximus violated the wage-and–hour provisions of the FLSA by misclassifying the Trainers' position as exempt, by depriving them of their lawful overtime wages, prohibiting them from keeping actual time records of the hours they worked at their place of employment and while at home and retaliated against them for complaining about the FLSA violations.

The Court conditionally certified a collective action under the first-step of the two part certification process pursuant to the provision of the FLSA, 29 U.S.C. § 216(b). Dkt. 20 (citing *Murillo v. Pac. Gas & Elect. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. 2010). On May 13, 2014 the Court ordered that notice to be sent to the putative class of Trainers. Dkt. 29. The second-step of the certification process which requires the court to make a factual determination of whether the plaintiffs are similarly situated usually occurs after discovery is complete. *Murillo v. Pac. Gas & Elect. Co.*, 2010 WL 2889728, at *2 (E.D. Cal. July 21, 2010).  On September 24, 2015, the parties informed the Court during a status conference of a partial settlement of the Trainers' claims on all issues except liquidated damages and attorney's fees and costs. Dkt. 127.

## II. NOTICE TO THE CLASS AND THE TERMS OF THE SETTLEMENT

On September 24, 2015 the court preliminarily approved the class settlement and ordered the Plaintiffs to provide written notice to class members who would be bound by the Proposed Partial Settlement no later than October 9, 2015. On October 9, 2015 the Plaintiffs mailed and email a Notice of Partial Settlement to all Trainers who opt-in to the class. See Plaintiffs' Motion to Approve Proposed Partial Settlement, Exhibit A. The Notice provided a specific description of the terms of the Proposed Partial Settlement including the total amount of the settlement, $375,799.16, and each Trainer received a calculation of the individual amount that he or she would receive in damages. *Id*. The damages were calculated based upon the Trainer's annual salary and the total hours of the overtime claimed by each Trainer from May 20, 2013 to January 31, 2014. *Id*. Each Trainer is expected to receive 80.35 percent of their total claimed overtime hours multiplied by 1.5 times the hourly equivalent of their annual salary. *Id*. The Notice also provided an example of how the damages in Proposed Partial Settlement were calculated using the foregoing formula. Each individual Trainer was provided with a chart which included their annual salary, claimed hours, and the percentage adjustment (80.35%) that was used to calculate their gross settlement without regard to any tax consequences of accepting the Proposed Partial Settlement. *Id*. at Attachment A. The estimated settlement amount was exclusive of all attorney fees and costs which will be determined by the Court.

Additionally the Notice explained that upon approval of the Proposed Partial Settlement the Trainers' claims would be dismissed except for the claims for liquated damages and the awarding of attorney fees and costs. *Id*. The Trainers were provided contact information for Plaintiffs' counsel and advised that their right to be represented by counsel or appear pro se at the fairness hearing. Plaintiffs' counsel notified each Trainer of their right to object to the terms

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED
PARTIAL SETTLEMENT – Page 3

of the Proposed Partial Settlement by November 4, 2015 and how to submit any objections. Each Trainer was provided with a form to make written objections and instructions on how to be heard at the hearing. See Plaintiffs' Motion to Approve Proposed Partial Settlement, Exhibit B. The Notice further notified each Trainer that on November 19, 2015 the Court: (a) will be hear arguments on whether Maximus will be obligated to pay liquidated damages in addition to the settlement amount to each Trainer, and (b) will conduct a fairness hearing on the Proposed Partial Settlement. *Id*.

### III. LEGAL STANDARD

Settlements of collective actions under the FLSA require court approval to ensure that the settlement is fair and reasonable, protects workers from substandard wages and oppressive working hours and to guarantee the rights cannot be abridged or otherwise waived because that would nullify the FLSA purposes and thwart the legislative policies it was designed to effectuate. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (citing *Berrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1445 (1981) (citations omitted)). "Even when the parties settle, the court 'must make some final class certification finding before approving a collective action settlement.'" *Murillo v. Pacific Gas and Electric Co.*, 2010 WL 2889728, at *2 (quoting *Carter v. Anderson Merchandisers, LP,* 2010 WL 144067, at *3 (C.D.Cal. Jan. 7, 2010)) (citations omitted). Where the "'parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement.'" *Murillo*, 2010 WL 2889728, at *3 (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir.2003)).

"'Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice

is given to class members, whether final approval is warranted.'" Dkt. 127 at 2 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing *Manual for Complex Litigation*, Third, § 30.41 (1995)). The second step requires the court to consider the overall settlement as a whole rather than the individual parts. *Murillo*, 2010 WL 2889728, at *3 (citations omitted). At the second step the court holds a fairness hearing where the court entertains any objections to "(1) the treatment of this litigation as a class action and/or (2) the terms of the settlement." *Murillo*, 2010 WL 2889728, at *4 (citing *Diaz v. Trust Territory of Pac. Islands,* 876 F.2d 1401, 1408 (9th Cir.1989)). "[T]he court makes a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *Id*. at *4 (citing *DIRECTV, Inc.*, 221 F.R.D. at 525). The court in determining whether the terms of a class settlement is fair, adequate, and reasonable under Rule 23(e) must consider several factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Murillo*, 2010 WL 2889728, at *5 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1019, 1026 (9th Cir. 1998)).

### IV.  THE FACTORS UNDER RULE 23(e)

*A. Strength of the Plaintiffs' Case*

The Court in this action has the benefit of an extensive record from which to assess the strength of Plaintiffs' case. Plaintiffs' claims of overtime hours were vigorously disputed by Maximus during the course of the litigation. Maximus first contested the contents of the Notice to be sent to the Trainers informing them of their rights to opt-in to this action. See Dkts. 17-20

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 5

and 23-29. The parties participated in 25 hours of mediation, over a two day period, which was conducted by a Judge from the State of Washington with vast experience, including in FLSA cases, which failed to reach a settlement. Maxmius filed a Motion for Partial Summary. Dkt. 84. Plaintiffs filed a Motion for Summary Judgment that included five Trainer declarations and hundreds of pages of exhibits. Dkts. 93-94 and 121.  Maximus submitted twelve declarations in opposition to the Motion for Summary Judgment including declarations from three undisclosed Trainers and documents not previously produced in response to discovery which contested the overtime hours worked by Trainers in Boise and Brownville. Dkt. 99. Plaintiffs filed a Motion to Strike the undisclosed Declarants and newly produced documents. Dkts. 101 and 118.

The Trainers did not have accurate time records of the hours they worked on a daily basis because Maximus required them to record eight hours on the days they worked up to forty hours per week. The Trainers had to calculate their overtime hours from memory and by using incomplete badge swipe data and other types of documents. Had the parties not reached a settlement on the issue of overtime hour's calculations, the Trainers' reliance on their memories and incomplete data while reconstructing their overtime hours would have subjected Trainers to scrutiny for lack of precision, as well as allegations by Maximus that Trainers overstated their hours. Maximus required the Brownville Trainers to "self report" their overtime hours under circumstances in which they coerced into under reporting their hours. Maximus exploited their policies prohibiting Trainers from accurately recording the hours worked and preventing Trainers from recording the actual hours worked in the Deltek time keeping system to contend that their overtime hours were inaccurate and overstated and that there were "significant variability" between the hours claimed by the Trainers and between the Boise and Brownsville sites. Dkt. 99-11 at 8¶24-¶25.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 6

Maximus was able to use its vast resources, which far exceeded the resources available to the Trainers, to retain an expert witness at $475 per hours in order prepared an expert report contesting and substantially reducing the number of overtime hours claimed by the Trainers. Dkt. 103-1 and 103-2. Maximus's expert contended that "Plaintiffs have not provided accurate and reliable evidence or a methodology to support the claimed hours" and "Plaintiffs have not provided any evidence or a methodology to support their apparent claim that these Trainers [Trainers who filed Declarations to support summary judgment] are representative of the other Trainers in Boise or Brownville." Dkt. 99-11 at 3¶7. The expert broadly attacked the Trainers' claimed overtime hours by asserting "[n]owhere do Plaintiffs provide support or evidence to indicate that the Plaintiffs' Claimed Hours accounted for key card data . . . , Deltek data . . . , 'check-in' and 'check-out' emails . . . , Daily Training Reports . . . , course schedules . . . , Trainer Schedules . . . , [and] Time Recording Data Sheets." Dkt. 99-1 at 4¶11-6¶17.

Plaintiffs filed a Motion in Limine to contest the methodology and reliability of the Maxmius's expert's opinion. Dkts. 102-107 and 121. The Motion in Limine required a thorough complete analysis of the report's findings and opinions based upon a review of thousands of computations and voluminous documents. This analysis could only be done after Plaintiffs served interrogatories and requests for production of documents regarding the expert's opinions and findings and by filing a Motion to Compel because the report failed to disclose necessary information on what data the expert used to reconstruct and extrapolate the hours worked on a weekly basis using her own untested methodology. Dkts. 108 and 122.

Plaintiffs were able to establish, using the documentation belatedly disclosed months after submitting the expert report and after the discovery deadline and the filing of the motions for summary judgment and in limine that the expert relied upon inaccurate assumptions and

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 7

understandings of the hours worked by Trainers and used an unreliable "extrapolation" methodology based upon incomplete and questionable assumptions from selected documentation to calculate the times the Trainers left work and failed to calculate any time for the hours worked at home or during lunch. See Dkts. 102 at 19-32 and 121 at 25-28. The Trainers were able to establish that the expert's extrapolation methodology resulted in a high error rate by using available documentation that indisputably established the Trainers were working more overtime hours on the days determined by the expert. Dkt. 121 at 13-16. The expert's "understanding," on which she based her reconstruction of the hours worked by Trainers and opinions, were not based upon accurate time records but were based upon three hours of conversations with two Maximus Directors who lacked personal knowledge because they did not work in Boise and were not present during the times periods reviewed by the expert. See Dkt. 102-1 at 6-15 and 121 at 31-37. Maximus's submitted three Declarations from non-opt in Trainers that directly contradicted the expert's assumptions and reconstruction of the overtime hours worked by the opt-in Trainers. See Dkt. 121 at 20-25.

    A settlement was reached after a series of meetings after which offers and counteroffers were made. The settlement precludes a decision on the merits on the pending dispositive motion pertaining to the back overtime pay owed to Trainers and the evidentiary motions. However, it is certain that the strength or weakness of the claims and defenses stated  may have had an effect on the negotiations and ultimately the settlement amount. The eventual outcome is of the motions or if the case went to trail is not known. Therefore the arguments and contentions regarding the disputed factual and legal issues favor settlement of this action.

**B.  Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The risks and complexity of the litigation cannot be disputed based upon the voluminous discovery and pretrial motions filed by the parties. Hundreds of hours of attorney time were required by both counsels to address the disputed factual and legal issues which arose during the litigation as the foregoing indicates. The mediation took 25 hours and cost $10,100 for the mediator. The deposition costs were several thousand dollars. The expert witness costs were substantial.

Maximus vigorously disputed the number of overtime hours claimed by the Trainers and contested that the Trainers were similarly situated because of the variance between the hours claimed by individuals and the expert and the variance between the individual Trainers and the two sites. The Trainers challenged the extrapolation methodology and reliability of Maximus's expert's reconstruction of the overtime hours. "[T]he presence of substantially disputed legal issues at the heart of plaintiff's case does serve to heighten the risk and uncertainty that both parties would face if this action went to trial." *Murillo*, 2010 WL 2889728, at *7 (citing *Hanlon*, 150 F.3d at 1026). If Maximus were to prevail, then the Trainers would have received far less in overtime hours and damages regardless of whether the case settled after the Court ruled on the dispositive and evidentiary motions or after a jury trial. The disputed factual and legal issues created substantial risk for both sides if a settlement had not been reached by the parties. If a trial was necessary the Trainers would have risked some of the damages being offered in settlement and would have further delayed receipt of their overtime wages. The complexity, duration and expense of a trial would have been considerable because of the expert's testimony and defenses raised by Maximus. The trial would have required Trainers to take time off from their other employment, travel to Boise from Brownsville, and caused further distress and disruption of their normal activities. These considerations favor settlement of this action.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 9

*C. Risk of Maintaining Class-Action Status Throughout Trial*

Maximus at trial may have moved to de-certify the conditional class certification contending that the Trainers were not similarly situated because of the variances in the number of overtime hours claimed by individual Trainers. Plaintiffs continue to assert that the Trainers were similarly situated and the class would have been certified by the Court. There is no assurance that this issue would have been favorably resolved on summary judgment or at trial. The risk of decertification favors settlement of this action.

*D.  Amount Offered in Settlement*

The Proposed Partial Settlement amount is $375,799.16. The total amount of damages were calculated based upon the Trainer's annual salary and the total hours of the overtime claimed by each Trainer from May 20, 2013 to January 31, 2014. Each Trainer is expected to receive 80.35 percent of their total claimed overtime hours multiplied by 1.5 times of the hourly equivalent of their annual salary. Maximus's expert asserted that the total of 9,892.5 overtime hours claimed by the Boise Trainers should be reduced to 3,458 overtime hours or 35 percent of the claimed hours and that the total of 6,211 overtime hours claimed by the Brownville Trainers should be reduced to 3,013 overtime hours or 48.5 percent of the claimed hours. Dkt. 99-11 at 3 ¶10 and 13 ¶39.

All Trainers who claimed overtime hours will receive the same percentage of their claimed hours. The issue of liquidated damages will be determined by the Court. If liquidated damages are awarded by the Court, each Trainer will get the same percentage of the liquidated damages. The number of overtime hours each Trainer would be paid is substantially higher than the reconstructed hours calculated by the expert. The Trainers will not be charged for any of the costs and attorney fees that were incurred in pursuing this action. Plaintiffs' counsels will seek an

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 10

award of costs and attorney fees from Maximus. The amount of the settlement is fair and reasonable considering the risks and uncertainty of going to trial. The amount of the overtime damages each Trainer would receive favors settlement of this action.

### E.  Extent of Discovery Completed and the Stage of the Proceedings

The Proposed Partial Settlement was reached after the completion of discovery. The discovery undertaken in this case was extensive. This included written interrogatories and requests for production of documents that required the production and review of hundreds of thousands of documents. Maximus took the depositions of five Trainers in Boise and three Trainers in Brownville, Texas. Plaintiffs took the depositions of three Maximus employees including the Senior Director of Trainer in Brownville, and the Director of Operations, and the Director of Human Capital in Boise. Maximus produced an expert report to support its defenses and contentions regarding the number of overtime hours that Trainers worked at both sites. The parties also used an experienced third party mediator who gave a neutral evaluation of the strengths of the arguments of each party. See *Murillo*, 2010 WL 2889728, at *8. The parties had comprehensive briefing of the factual and legal issues for purposes of summary judgment which disclosed the arguments and theories the parties would assert at trial. "A settlement that occurs in an advanced stage of the proceedings 'suggests that the parties . . . carefully investigated the claims before reaching a resolution." *Murillo*, 2010 WL 2889728, at *8 (citing *Alberto v. GMRI, Inc.*, No. Civ. 07-1895 WBS DAD, 208 WL 4891201m at *9 (E.D. Cal. Nov. 12, 2008)). The extensive discovery conducted and the fact that settlement was reached after an unsuccessful third party mediation and motions for summary had been filed favor settlement of this action.

### F.  Experience and Views of Counsel

Plaintiffs' counsel feels due to their familiarity with the case and their litigation experience that the Proposed Partial Settlement is fair and reasonable and provides sufficient compensation to the Trainers under the circumstances of this action. Maximus's counsels are also very familiar with the case and have many years of litigation experience. "When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits." *Murillo*, 2010 WL 2889728, at *8 (citations omitted). Plaintiffs' counsel, Mr. Belodoff, has over 37 years of litigation experience in many different substantive areas of the law including employment related cases and twelve class actions. He has been the lead counsel for over thirty-five years and was appointed by the Ninth Circuit as the Next Friend to a class which at any one time has approximately 18,000 members in the case of *Jeff D. v. Otter*, Case No. CV 80-4091-S-BLW (D. Idaho).[1] He was lead counsel in a class action brought under the Privacy Act on behalf of tribal members at the Fort Hall Indian Reservation which resulted in a multi-million settlement. See *Fort Hall Landowners Alliance v. Bureau of Indian Affairs*, Case No. CV-99-52-E-BLW (D. Idaho). He co-counseled the *Fort Hall* case with senior partners at the Defendant's firm in that action. He has represented thousands of clients in numerous cases which resulted in judgments and settlements worth tens of millions of dollars. He is the immediate past chairperson of the Litigation Section of the Idaho State Bar, has been recognized by other Idaho attorneys as a "Super Lawyer" five times and has taught and presented numerous seminars on litigation skills on a national, regional and state level. Mr. Hudson has more than five years of

---

[1] The *Jeff D* class challenged the State's failure to provide all Idaho children who had serious emotional disturbances with community-based mental health services. The case has been successfully appealed to the Ninth Circuit three times to enforce consent decrees and court orders and reverse the vacating of the consent decrees. See *Jeff D. v. Otter*, 643 F.3d 278 (9th Cir. 2011); *Jeff D. v. Kempthorne*, 365 F.3d 844 (9th Cir.2004); and *Jeff D. v. Andrus,* 899 F.2d 753 (9th Cir. 1990). The United States Supreme Court upheld the waiver of attorney fees in the first consent decree. See *Evans v. Jeff D.*, 475 U.S. 717 (1987).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 12

major litigation experience in employment related cases. These factors supports approval of the settlement in this action.

G.  *Presence of a Government Participant*

This factor is not relevant because no government party participated in the action.

H.  *Reaction of the Class Members to the Proposed Settlement*

Plaintiffs' counsel sent Notice to all opt-in Trainers and spoke and corresponded to many of them personally. It is believed that every Trainer has received notice of the terms of the Proposed Partial Settlement, the amount of damages each Trainer would receive and how the damages would be calculated. *See supra*. at 2-3. At this time no objections to the Proposed Partial Settlement have been received by counsel. "'It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *Murillo*, 2010 WL 2889728, at *9 (quoting *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D.Cal.2008) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D.Cal.2004)). This factor favors settlement of this action.

## V.  CONCLUSION

The Plaintiffs and the similarly situated Trainers would request the Court approve the terms of the Proposal Partial Settlement as fair and reasonable for the forgoing reasons.

Respectfully submitted this 6th day of November, 2015.

     /s/ Howard A. Belodoff
Howard A. Belodoff
BELLODOFF LAW OFFICE PLLC

     /s/ Jeremiah M. Hudson
Jeremiah M. Hudson

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 13

FISHER RAINEY HUDSON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing and a copy of this document to the following persons:

B. Newal Squyres
Nsquyres@hollandhart.com

Pamela S. Howland
phowland@hollandhart.com

/s/_____

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE PROPOSED PARTIAL SETTLEMENT – Page 14