UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| YVETTE NORTON, JEANNETTE RODRIGUEZ-GUZMAN, KELLY BARKER, JOSEPH BELL, BRAD EPPERLY, STEPHANIE JONES, KATHERINE KELLEY KNOWLES, NANCY RICHARDS, and MARK ZUMWALT, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAXIMUS INC.,<br><br>    Defendant. | CIV. NO. 1:14-00030 WBS<br><br>MEMORANDUM AND ORDER RE: MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT |

----oo0oo----

This class action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, involves claims by plaintiffs who work as Trainers and Supervisors for defendant Maximus Inc. This Order is limited to the Trainer plaintiffs' claims based on defendant's misclassification of the Trainers as exempt

1

employees, failure to compensate the Trainers for overtime wages, and alleged retaliation against the Trainers when complaints were made about their exempt classification.  Presently before the court is the Trainer plaintiffs' motion for final approval of the partial class action settlement.

I. Factual and Procedural Background

Defendant operates calls centers in Boise, Idaho and Brownsville, Texas to provide support for implementation of the Affordable Care Act.  The Trainers in both facilities worked overtime hours but were not compensated for that overtime when they were classified as exempt employees.  Plaintiffs initiated this class action on January 24, 2014 and, shortly thereafter, defendant voluntarily reclassified the Trainers as non-exempt hourly employees.  Upon reclassification, all Trainers received the same hourly pay and were compensated for their overtime.

The court granted preliminary approval of plaintiffs' partial class action settlement on September 24, 2015. (Docket No. 127.)  Plaintiffs now seek final approval of the class-wide partial settlement pursuant to Federal Rule of Civil Procedure 23(e).  Defendant supports plaintiffs' motion for final approval. (Docket No. 134.)

II. Discussion

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members,

whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litig., Third, § 30.41 (1995)).

The Ninth Circuit has declared a strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

### A. Class Certification

A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). See Ontiveros v. Zamora, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506, at *4 (E.D. Cal. July 7, 2014); Fed. R. Civ. P. 23(a)-(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, see Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class, see Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403-05 (1977).

#### 1. Rule 23(a) Requirements

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

>defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

### a. Numerosity

Under the first requirement, "[a] proposed class of at least forty members presumptively satisfies the numerosity requirement." Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012); see also, e.g., Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.). The class in this case consists of forty-six trainers: thirty-three from the Boise call center and thirteen from the Brownsville call center. (See Pls.' Mem. at 2 (Docket No. 133-1).) This satisfies the numerosity requirement.

### b. Commonality

Commonality requires that the class members' claims "depend upon a common contention" that is "capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011). "[A]ll questions of fact and law need not be common to satisfy the rule," and the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

4

1           The proposed class includes all former and current
2  Trainers who were employed "at either Maximus's Affordable Care
3  Act call centers located in Boise, Idaho or Brownsville, Texas
4  between May 20, 2013, and January 31, 2014" and who "'opted in'
5  to the above-named lawsuit by filing either a 'Consent to Join'
6  or a 'Consent to Sue' form during the course of this litigation."
7  (Pls.' Notice of Proposed Partial Settlement ("Pls.' Notice") at
8  2 (Docket No. 133).)  The participating Trainers allege a common
9  core of salient facts and legal issues: defendant misclassified
10 them as exempt, deprived them of their lawful overtime wages,
11 prohibited them from keeping accurate time records of the hours
12 they worked, and allegedly retaliated against them for
13 complaining about the FLSA violations.  (Pls.' Mem. at 2.)  While
14 the damages for each Trainer are not identical, they share common
15 legal contentions and, as a result, the proposed class meets the
16 commonality requirement.
17                c.    Typicality
18           Typicality requires that named plaintiffs have claims
19 "reasonably coextensive with those of absent class members," but
20 their claims do not have to be "substantially identical."
21 Hanlon, 150 F.3d at 1020.  The test for typicality "is whether
22 other members have the same or similar injury, whether the action
23 is based on conduct which is not unique to the named plaintiffs,
24 and whether other class members have been injured by the same
25 course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497,
26 508 (9th Cir. 1992) (citation omitted).
27           While the Trainers worked at two separate facilities
28 and worked different amounts of overtime, the Trainers had the

same job responsibilities and suffered the same type of injury from defendant's misclassification of them as exempt. Moreover, the differences in the number of overtime hours claimed by the Trainers are taken into account by the settlement agreement. As the settlement notice explains, "[e]ach Participating Trainer's Gross Settlement Payment will differ based upon the amount of claimed overtime hours each Participating Trainer claimed during the course of this litigation, which each Participating Trainer submitted to his or her attorneys, as well as the annual salary that each Participating Trainer was offered by Maximus upon being hired as a Trainer." (Pls.' Notice at 3.) Each Trainer will receive 80.35% of their total claimed overtime hours multiplied by 1.5 times the hourly equivalent of their annual salary. (Pls.' Mem. at 10.) The proposed class therefore meets the typicality requirement.

      d.  Adequacy of Representation

To resolve the question of adequacy, the court must make two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. These questions involve consideration of a number of factors, including "a sharing of interests between representatives and absentees." Brown v. Ticor Title Ins., 982 F.2d 386, 390 (9th Cir. 1992).

There do not appear to be any conflicts of interest. The named plaintiffs and their counsel's interests are generally aligned with the class members' interests. As discussed above,

6

1 the class members suffered a similar injury as the named
2 plaintiffs and the definition of the class is narrowly tailored.
3 Furthermore, the named plaintiffs will not receive an incentive
4 payment, which could create a potential conflict. Instead, the
5 named plaintiffs will recover the same 80.35% of their claimed
6 overtime hours as all other class members.
7         In addition, the named plaintiffs and their counsel
8 have vigorously prosecuted the action on behalf of the class.
9 "Although there are no fixed standards by which 'vigor' can be
10 assayed, considerations include competency of counsel and, in the
11 context of a settlement-only class, an assessment of the
12 rationale for not pursuing further litigation." Hanlon, 150 F.3d
13 at 1021. Plaintiffs' counsel--Howard Belodoff and Jeremiah M.
14 Hudson--both have considerable experience with employment related
15 cases. (Pls.' Mem. at 12.) Plaintiffs' counsel conducted full
16 discovery and 25 hours of mediation before deciding to settle.
17 (Id. at 11, 6.) This included written interrogatories,
18 production and review of hundreds of thousands of documents, and
19 a number of depositions. (Id. at 11.) Plaintiffs' counsel also
20 fully briefed a motion for summary judgment and defended against
21 a cross-motion for summary judgment. Plaintiffs' counsel seems
22 to have carefully considered the risks of further litigation.
23 (Id. at 5-9.) Accordingly, the court concludes that the absence
24 of conflicts of interest and the vigor of counsel's
25 representation satisfy Rule 23(a)'s adequacy assessment.
26         2. Rule 23(b)
27         An action that meets all the prerequisites of Rule
28 23(a) may be certified as a class action only if it also

satisfies the requirements of one of the three subdivisions of Rule 23(b). Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing Hanlon, 150 F.3d at 1022); see also Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). The class members' contentions appear to be similar, if not identical. Again, although there are differences in overtime hours claimed by class members, there is no indication that those variations are "sufficiently substantive to predominate over the shared claims." See id. Accordingly, the court finds that common questions of law and fact predominate over the class members' claims.

In considering whether a class action is superior, the court considers four non-exhaustive factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate

8

|   |   |
|---|---|
| 1 | actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. |

Fed. R. Civ. P. 23(b)(3). The parties settled this action prior to certification, making factors (C) and (D) inapplicable. See Murillo, 266 F.R.D. at 477 (citing Windsor, 521 U.S. at 620). Class members might have an interest in individually controlling prosecution given that recovery through settlement will amount to a recovery of 80.35% of their total claimed overtime hours and no additional damages for retaliation. In theory, if class members pursued litigation individually there would be a possibility of recovering 100% of their claimed overtime hours and additional damages for retaliation. However, as will be discussed in greater detail below, see supra Part II.B.2.a, there are significant risks associated with going to trial in this case and weaknesses in plaintiffs' retaliation claim. As a result, class members' interest in pursuing individual suits is likely low. The court is unaware of any concurrent litigation already begun by class members regarding FLSA violations by defendant. At this stage, the class action device appears to be the superior method for adjudicating this controversy.

Accordingly, since the settlement class satisfied both Rule 23(a) and Rule 23(b)(3), the court will grant final certification of the settlement class.

### 3. Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it

1 "must direct to class members the best notice that is practicable
2 under the circumstances, including individual notice to all
3 members who can be identified through reasonable effort." Fed.
4 R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and
5 content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D.
6 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,
7 417 U.S. 156, 172-77 (1974)). Although that notice must be
8 "reasonably certain to inform the absent members of the plaintiff
9 class," actual notice is not required. Silber v. Mabon, 18 F.3d
10 1449, 1454 (9th Cir. 1994) (citation omitted).

11 Plaintiffs mailed and emailed notice to all of the
12 Trainers who had opted into the litigation on October 9, 2015.
13 (Pls.' Mem. at 3.) The notice included a specific description of
14 the lawsuit, the terms of the proposed settlement, and the time
15 and place of the final fairness hearing. (Pls.' Notice at 2-3,
16 6-7.) In addition, each Trainer received a personalized chart
17 with their annual salary, claimed overtime hours, and the
18 percentage adjustment that was used to calculate their gross
19 settlement. (Id.; Pls.' Mem. at 3.)

20 The notice informed the Trainers of their right to
21 object to the settlement agreement on or before November 4, 2015
22 either by submitting a letter or "Attachment B." If they agreed
23 with the proposed settlement agreement, the notice explained that
24 they could "either (a) do nothing, or (b) state [their] approval
25 in the comment section of 'Attachment B.'" (Pls.' Notice at 5.)
26 Lastly, it explained that as part of the agreement, class members
27 would agree to dismiss their overtime payment, misclassification,
28 and retaliation claims against defendant but not their claims for

10

liquidated damages, attorney's fees, costs, or any FLSA claim they may have as a Supervisor in the case. (Id. at 4.)

The content of the notice was reasonably certain to inform the Trainers of the terms of the settlement agreement and was even individualized to reflect each Trainer's claimed overtime hours and respective recovery. The notice therefore satisfied Rule 23(c)(2)(B). See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

### B. Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined class treatment to be warranted, the court must now determine whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at 1026. This process requires the court to "balance a number of factors," including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026.

#### 1. Strength of Plaintiffs' Case

An important consideration is the strength of plaintiffs' case on the merits balanced against the amount

11

offered in the settlement. DIRECTV, 221 F.R.D. at 526. Unlike in most cases where the court is not familiar with the issues at the time of settlement, the parties in this case had filed and fully briefed cross-motions for summary judgment and the court had begun analyzing those motions prior to settlement. Still, the district court is not required to reach any ultimate conclusions on the merits of the dispute, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of SF, 688 F.2d 615, 625 (9th Cir. 2004).

The settlement terms compare favorably to the uncertainties with respect to liability in this case. Plaintiffs would face significant hurdles at trial in proving the total number of overtime hours owed. For example, to estimate their overtime hours, plaintiffs submitted declarations from several Trainers and contended this was representative testimony and a fair approximate of the overtime worked by the other employees. Defendant, however, presented evidence that the Trainer declarants did not work similar enough overtime hours to testify as representatives for the rest of the class. Relying on a statistical computer software program, defendant's expert witness contended that the 9,892.5 overtime hours claimed by the Boise Trainers should be reduced to 3,458 overtime hours and the 6,211 overtime hours claimed by the Brownsville Trainers reduced to 3,013. (Id. at 7, 10; Def.'s Resp. at 3-4 (Docket No. 134).) While plaintiffs contest the methodology and reliability of the expert's opinion, (Pls. Mem. at 7), there is no question that

12

this would be a highly disputed issue at trial.

The settlement agreement focuses on the unpaid overtime claim, but if plaintiffs had proceeded to trial they would also face significant difficulties in proving their retaliation claim. The anti-retaliation provision of the FLSA renders it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). "Under McDonnell Douglas, a plaintiff establishes a prima facie case by showing [1] he engaged in an activity protected by the FLSA, [2] he suffered an adverse employment action subsequent to the protected activity, and [3] a causal connection between the protected activity and the employment action." Mayes v. Kaiser Found. Hosps., No. 2:12-CV-1726 KJM EFB, 2014 WL 2506195, at *9 (E.D. Cal. June 3, 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). In order to constitute a protected activity under the FLSA, "an employee must actually communicate a complaint to the employer." Lambert v. Ackerley, 180 F.3d 997, 1007 (9th Cir. 1999).

Defendant conceded that plaintiffs Barker and Rodriguez-Guzman "raised concerns . . . about whether the Trainer position had been correctly classified as exempt from overtime compensation under the FLSA," (Lowry Decl. ¶ 6 (Docket No. 84-3)), and that this constituted protected activity under the FLSA, (see Def.'s Reply to Motion for Summ. J. at 5 (Docket No. 92)). Defendant argued in its summary judgment motions, however, that none of the Trainers except Barker and Rodriguez-Guzman engaged

13

in protected activity and thus only those two individual plaintiffs could satisfy this element of the Trainers' FLSA retaliation claim. While it is plausible that the named plaintiffs raised complaints on behalf of all the Trainers at the Boise call center, where they worked, it would be very difficult for them to prove that they also spoke on behalf of the Trainers at the Brownsville call center. It is therefore unclear whether plaintiffs could prove that the Brownsville Trainers participated in protected conduct. Moreover, it would be challenging to prove that plaintiffs suffered an adverse employment action subsequent to complaining. Despite their allegations that they suffered a reduction in their annual compensation upon reclassification, the record suggests the Trainers can actually earn a higher annual income while working significantly less overtime now that they are non-exempt hourly employees.

In comparing the strength of plaintiffs' case with the proposed settlement, the court finds that the proposed settlement is a fair resolution of the issues in this case.

2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Further litigation could greatly delay resolution of this case and increase expenses. Prior to any judgment, the parties would likely have had to litigate class certification and a jury trial. This weighs in favor of settlement of the action.

3. Risk of Maintaining Class Action Status Throughout Trial

Plaintiffs state that if the case proceeded to trial, there would be a risk that defendant would succeed in

14

decertifying the class because the Trainers were not similarly situated due to the variance in the number of overtime hours claimed by individual Trainers. (Pls.' Mem. at 10.) Accordingly, this factor also favors approval of the settlement.

### 4. Amount Offered in Settlement

In assessing the amount offered in settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Officers for Justice, 688 F.2d at 628. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Id.

The value of the settlement fund in this case is $375,799.16. (Pls.' Mem. at 10.) Each Trainer will receive 80.35% of their total claimed overtime hours multiplied by their hourly rate equivalent of the salary they were offered upon being hired by defendant. (Id.) The minimum hourly rate equivalent will be $18.36 per hour in Boise and $16.83 in Brownsville. (Pls.' Notice at 3.) The attorney's fees and costs have not yet been determined but will not deduct from the settlement amount. (Id. at 3.) Class members' actual recovery is comparable to the amount they would recover at trial and is particularly fair and reasonable in light of the risks and costs of further litigation in this case. An 80% recovery is also a strong result for plaintiffs given that defendant's expert witness believed the overtime hours should have been reduced to 35% of the claimed hours in Boise and 48.5% of the claimed hours in Brownsville.

### 5. Extent of Discovery and the State of Proceedings

A settlement that occurs in an advanced stage of the proceeding indicates the parties carefully investigated the claims before reaching a resolution. Alberto v. GMRI, Inc., Civ. No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12, 2008.) The parties in this case completed extensive discovery that included written interrogatories, production of hundreds of thousands of documents, and eight depositions. (Pls.' Mem. at 11.) In addition, defendant produced an expert report to supports its contentions regarding the number of overtime hours worked by plaintiffs. (Id.) The parties also engaged in twenty-five hours of mediation before a third-party mediator who gave a neutral evaluation of the strengths of both side's arguments. (Id.) Lastly, the parties exchanged extensive briefing in support of their cross-motions for summary judgment. (Id.) The parties' investigation of the claims through discovery, mediation, and summary judgement motions and their consideration of the views of a third-party mediator weigh in favor of settlement.

### 6. Experience and Views of Counsel

Plaintiffs' counsel have extensive experience litigating employment actions. Mr. Belodoff has over thirty-seven years of litigation experience, which includes twelve class action cases and several employment related cases. (Pls.' Mem. at 13.) He is also the past chairperson of the Litigation Section of the Idaho State Bar. (Id.) Mr. Hudson has more than five years of litigation experience in employment related cases. (Id.) Based on their experience, plaintiffs' counsel believe the proposed settlement is fair and adequate to the class members.

16

(Id.)  The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation.  Alberto, 2008 WL 4891201, at *10.  This factor supports approval of the settlement agreement.

       7. Presence of Government Participant

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the court's analysis.

       8. Reaction of the Class Members to the Proposed Settlement

Notice of the settlement was sent to participating Trainers on October 9, 2015 and no objections were filed prior to the November 9, 2015 deadline.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  DIRECTV, 221 F.R.D. at 529.  Accordingly, this factor weighs in favor of the court's approval of the settlement.

Having considered the foregoing factors, the court finds the partial settlement is fair, adequate, and reasonable pursuant to Rule 23(e).

III. Conclusion

Based on the foregoing, the court grants final certification of the settlement class and approves the partial settlement set forth in the settlement agreement as fair, reasonable, and adequate.  Consummation of the settlement agreement is therefore approved.  The settlement agreement shall be binding upon all participating Trainers who opted into the litigation.

    IT IS THEREFORE ORDERED that plaintiffs' motion for final approval of the class and class action settlement be, and the same hereby is, GRANTED.

    IT IS FURTHER ORDERED THAT:

(1) solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class: All Trainers employed by Maximus's Affordable Care Act call centers in Boise, Idaho or Brownsville, Texas between May 20, 2013 and January 31, 2014 who opted into this lawsuit by filing either a "Consent to Join" or a "Consent to Sue" form during the course of this litigation. Specifically, the court finds that:

 (a) the settlement class members are so numerous that joinder of all settlement class members would be impracticable;

 (b) there are questions of law and fact common to the settlement class which predominate over any individual questions;

 (c) claims of the named Trainer plaintiffs are typical of the claims of the settlement class;

 (d) the named Trainer plaintiffs and plaintiffs' counsel have fairly and adequately represented and protected the interests of the settlement class; and

 (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

(2) the court appoints the named Trainer plaintiffs,

18

|   |     |                                                                                 |
|---|-----|---------------------------------------------------------------------------------|
| 1 |     | Jeannette Rodriguez-Guzman, Kelly Barker, Joseph Bell, |
| 2 |     | Brad Epperly, Stephanie Jones, Katherine Kelley Knowles, |
| 3 |     | Nancy Richards, and Mark Zumwalt, as representatives of |
| 4 |     | the class and finds that they meet the requirements of |
| 5 |     | Rule 23; |
| 6 | (3) | the court appoints Howard A. Belodoff, Belodoff Law |
| 7 |     | Office, PLLC, 1004 West Fort Street, Boise, Idaho, 83702, |
| 8 |     | and Jeremiah M. Hudson, Fisher Rainey Hudson, 950 W. |
| 9 |     | Bannock Street, Suite 630, Boise, Idaho 83702, as counsel |
| 10 |    | to the settlement class and finds that counsel meets the |
| 11 |    | requirements of Rule 23; |
| 12 | (4) | the settlement agreement's plan for class notice is the |
| 13 |    | best notice practicable under the circumstances and |
| 14 |    | satisfies the requirements of due process and Rule 23. |
| 15 |    | The plan is approved and adopted.  The notice to the |
| 16 |    | class complies with Rule 23(c)(2) and Rule 23(e) and is |
| 17 |    | approved and adopted; |
| 18 | (5) | having found that the parties and their counsel took |
| 19 |    | appropriate efforts to locate and inform all putative |
| 20 |    | class members of the settlement, and given that no class |
| 21 |    | members have filed any objections to the settlement, the |
| 22 |    | court finds and orders that no additional notice to the |
| 23 |    | class is necessary; |
| 24 | (6) | as of the date of the entry of this Order, the Trainer |
| 25 |    | plaintiffs and all class members hereby do and shall be |
| 26 |    | deemed to have fully, finally, and forever released, |
| 27 |    | settled, compromised, relinquished, and discharged |
| 28 |    | defendant of and from their overtime pay, |

19

|    |     |                                                                 |
|----|-----|-----------------------------------------------------------------|
| 1  |     | misclassification, and retaliation claims.  Class members       |
| 2  |     | do not release their claims for liquidated damages,             |
| 3  |     | attorney's fees, costs, or any claims they may have under       |
| 4  |     | the FLSA as a participating Supervisor;                         |
| 5  | (7) | the Trainer plaintiffs and all class members' claims for        |
| 6  |     | failure to pay required overtime and keep accurate              |
| 7  |     | records, misclassification as exempt, and retaliation are       |
| 8  |     | dismissed with prejudice; however, without affecting the        |
| 9  |     | finality of this Order, the court shall retain continuing       |
| 10 |     | jurisdiction over the interpretation, implementation, and       |
| 11 |     | enforcement of the settlement agreement with respect to         |
| 12 |     | all parties to this action and their counsel of record;         |
| 13 |     | and                                                             |
| 14 | (8) | All payments pursuant to the settlement shall be made to        |
| 15 |     | each Trainer no later than ten court days after the date        |
| 16 |     | of this Order.                                                  |

Dated:  November 19, 2015

*/s/ William B. Shubb*

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE