Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com

Jeremiah M. Hudson, ISB No. 8364
Allison Blackman, ISB No. 8686
FISHER RAINEY HUDSON
950 West Bannock Street, Suite 630
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
Email: jeremiah@frhtriallawyers.com
       allison@frhtriallawyers.com

*Attorneys for Plaintiffs*
*and the Putative Collective Action Members*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YVETTE NORTON, JEANNETTE RODRIGUEZ-GUZMAN, KELLY BARKER, JOSEPH BELL, BRAD EPPERLY, STEPHANIE JONES, KATHERINE KELLEY KNOWLES, NANCY RICHARDS, and MARK ZUMWALT, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>MAXIMUS INC.<br><br>*Defendant* | Civil Action No. 1:14-cv-00030<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES** |

## I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Dist. Idaho Local Civ. R.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 1

54.2, and 29 U.S.C. § 216(b) Plaintiffs, JEANNETTE RODRIGUEZ-GUZMAN, KELLY BARKER, JOSEPH BELL, BRAD EPPERLY, STEPHANIE JONES, KATHERINE KELLEY KNOWLES, NANCY RICHARDS, and MARK ZUMWALT, and other Trainers who opted into the above-entitled action, by and through their undersigned attorneys, hereby file this Memorandum of Law in Support of Plaintiffs' Motion to Approve Attorney's Fees and Costs. For the reasons set forth below, Plaintiffs respectfully request that the Court apportion $837,734.00 in Plaintiff Trainers' case as attorney's fees and $19,521.88 as reimbursement of costs advanced by Plaintiffs' counsel.

## II.  PRELIMINARY STATEMENT

This is an action under the Fair Labor Standards Act, 29 U.S.C. § 216(b) to recover unpaid overtime compensation and compensation for "off the clock" work Plaintiffs earned during their employment as Trainers at Maximus, Inc. The parties settled Trainers' claims for back pay and the Court approved the settlement and awarded liquidated damages in its November 19, 2015 Orders. The gross amount of the settlement was $375.799.16 and the court granted Plaintiffs' Motion for Summary Judgment on liquidated damages, which was intended to resolved all of Defendant's liability to the opt-in Plaintiff Trainers under the FLSA in the case, excluding attorney's fees and costs.  The Court permitted Plaintiffs to file their motion for attorneys' fees and costs after the November 19, 2015, hearing for final approval of the settlement and the hearing on the parties cross-motions for summary judgment regarding liquidated damages.

## III.  DISCUSSION

Plaintiffs are requesting an interim award of attorney fees and costs on behalf of the Plaintiff Trainers in light of the fact that the Plaintiff Trainers' case was litigated almost

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 2

exclusively from the Plaintiff Supervisors case, which is still in the discovery phase of litigation.[1] *See* Dkts. 16, 16-1, 17, 17-1, and 20.

Under the FLSA, an award of attorneys' fees and court costs is mandatory. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); *Gribble v. Cool Transports, Inc.*, No. 06-cv-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) (FLSA mandates the payment of court costs to the plaintiff in the event of settlement).

The FLSA wage and hour fee shifting statute serves important public policy, to wit:

> The design of the Fair Labor Standards Act is intended to rectify and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" for workers. 29 U.S.C. § 202(a). The availability and award of attorney fees under § 216(b) must reflect the obvious congressional intent that the policies enunciated in § 202 be vindicated, at least in part, through private lawsuits charging a violation of the substantive provisions of the wage act. Moreover, the purpose of § 216(b) is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances; "[o]bviously Congress intended that the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs."

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass 'n., Local 307* v. *G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 501-502 (6th Cir. 1984); quoting *Maddrix v. Dize,* 153 F.2d 274, 275-76 (4th Cir. 1946), *accord, Fegley* v. *Higgins,* 19 F.3d 1126, 1134-35

---

[1] "It is well-established that interim attorney fees may be awarded in class actions." *Roberts v. Heim*, No. C 84-8069 TEH, 1991 WL 427888, at *6 (N.D. Cal. Aug. 28, 1991) The Ninth Circuit held in *Taylor v. Westly*, 525 F.3d 1288, 1290 (9th Cir. 2008) that one of the policy reasons behind an interim award of fees is to prevent "a considerable risk of starving out plaintiffs with what … have already determined to be good claims." *Id*.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 3

(6th Cir. 1994).

"The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)(internal citations omitted)  In *Fegley*, the Court held that "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights." *Id.* at 1134-35. "Only in rare or exceptional cases will an attorney's *reasonable* expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. County of Los Angeles,* 879 F.2d 481, 488 (9th Cir. 1988) (emphasis in original).

In *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), the United States Supreme Court recognized that in determining the amount of attorney fees to award, the "most critical factor is the degree of success obtained." If the complainant has achieved excellent results, he is entitled to a full compensatory fee award, including time spent on other matters on which he did not win. *Id*. at 435. There is no question that Plaintiff Trainers are the prevailing party. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (CA1 1978)). Plaintiff Trainers clearly prevailed by way of the partial settlement agreement of 80.35% of the amount of back overtime pay that each individual Plaintiff Trainer claimed, as well as being awarded liquidated damages by the Court. Considering the litigation as a whole, Plaintiff Trainers achieved excellent success. No Plaintiff Trainers objected to the settlement agreement. Dkt 139 at *17.

After determining that a prevailing party is entitled to fees, the Court must consider what

reasonable attorney's fees should be awarded. "The lodestar determination has emerged as the predominant element of the analysis in determining a reasonable attorney's fee award." *Morales v. City of San Raphael*, 96 F.3d 359, 363 (9th Cir. 1996) (internal quotations omitted). The "lodestar" is determined by multiplying the number of hours expended by class counsel times a reasonable hourly rate. *Id*. After calculating the lodestar, the Court then assesses whether it is necessary to adjust the "presumptively reasonable lodestar figure on the bases of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Id*. at 363-364.[2]

"There is a strong presumption that the lodestar figure represents a reasonable fee. 'Only in rare instances should the lodestar figure be adjusted on the basis of other considerations.'" *Morales*, *supra* 96 F.3d at 363 n. 8., quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).[3]

### A. Reasonable Hourly Rates.

In determining a reasonable hourly rate, the Court should consider the "experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996), as well as "the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). A court's determination of the hourly rate is made by considering "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are

---

[2] The Kerr factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

[3] "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, . . . and (5) the contingent nature of the fee agreement." *Morales*, 96 F.3d at 364 n. 9(internal citations omitted).

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 5

satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The goal is always to award an attorney a fully compensatory fee, that is, a fee comparable to what is traditional with attorneys compensated by a fee-paying client. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (citations and internal quotations omitted). The Supreme Court has held that a court may use current hourly rates rather than historic hourly rates to compensate for the delay in payment. *Id.* at 283-284.

Plaintiffs' attorneys have submitted Declarations from two respected and highly experienced attorneys from the Boise legal community who are knowledgeable of the current hourly rates for attorneys in the community. These Declarations support Mr. Belodoff's $425.00 hourly rate, Mr. Hudson's $250.00 hourly rate, and Ms. Blackman's $225.00 hourly rate due to the complexity of the issues raised in litigating Plaintiff Trainers' case as well as their respective legal experience.

Ms. Birch is generally familiar with the hourly rates billed by local attorneys that practice in Boise, Idaho, as well as the work of Mr. Belodoff and Mr. Hudson. Birch Decl. at ¶5 & 6. Ms. Birch, has practiced employment and civil rights law for 15 years. Birch Decl. at ¶2. Although a bulk of her litigation is on a contingency fee basis, Ms. Birch's billable rate for non-contingency cases is $250 per hour, which, in her opinion, is under market value. *See* Birch Decl. at ¶6. Ms. Birch attests to the difficulty of employment cases, including the risks that attorneys take by representing clients in employment cases that could span over several years without compensation, as well as the substantial risk of not being compensated at all. Birch Decl. at ¶7. Ms. Birch states that given their respective years of litigation in employment or other complex cases, Mr. Belodoff's, Mr. Hudson's and Ms. Blackman's hourly rates are certainly reasonable and consistent with what other attorneys charge by the hour in the Boise market. Birch Decl. at ¶11. Ms. Birch

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 6

also states that she believes the time spent on this case was reasonable and necessary to obtain the impressive and significant outcome. Birch Decl. at ¶¶10 & 11.

Ms. Ferguson stated that she is familiar with the market rate for professional legal services in Idaho and in Boise, as well as the amount by which a market rate may vary depending upon the particular attorneys' experience and qualifications. See Ferguson Decl. at ¶7. Ms. Ferguson, who has been a civil litigator for 29 years, has a current hourly rate of $400 per hour in complex cases, including class actions. Ferguson Decl. at ¶11. Ms. Ferguson believes that in light of the fact that Mr. Belodoff has extensive litigation experience in complex cases, including class actions, it is her opinion that an hourly rate of $425 per hour is similar to what other attorneys in Boise doing specialized litigation charge and is reasonable for prosecuting a class action of this complexity and difficulty under the Fair Labor Standards Act. Ferguson Decl. at ¶10. Ms. Ferguson further states that hourly rates of $250 for Mr. Hudson and $225 for Ms. Blackman are representative of what other attorneys in Boise would charge based upon Mr. Hudson's and Ms. Blackman's litigation experience in similar cases. *Id* at ¶10.

The issues that were raised in Plaintiff Trainers' case were difficult, novel, and required a thorough analysis and application of the facts and legal precedents over the past 25 months that preceded the Plaintiff Trainers' partial settlement and the Court's order granting liquidated damages in favor of Plaintiff Trainers. Mr. Belodoff's thirty-seven years of experience with complex litigation, which includes 12 class actions, and Mr. Hudson's more than five and a half years of experience in complex employment litigation played a role in the overall success of the outcome and justifies their respective hourly rates. *See* Belodoff Decl. ¶4; Hudson Decl. ¶2. Additionally, Mr. Hudson's hourly rate accounts for the fact that he is a partner at Fisher Rainey Hudson, and was responsible for paying overhead costs of employing and supervising associate

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 7

attorneys Allison Blackman, Nicholas Warden, and Jason Robles and paralegals, Jennifer Hanway, Steffanie Coy, and Clare Thibeau. Further, Mr. Hudson's firm bore the costs and time commitments that are attributable to clerical work, which included, among other things, sending notices and other mailings to each individual class member. Hudson Decl. ¶3.

Given the complexity and difficulty of the issues and positions taken by Defendants, the substantial interaction required and involvement in the case by many of the Plaintiff Trainers, the length of time it took before reaching the partial settlement and the Court's Order granting Plaintiffs' liquidated damages, and the contingent nature of the case, few attorneys would have considered representing the Plaintiffs who had no resources to compensate counsel or pay the costs. The hourly rates requested by Plaintiffs' counsel are reasonable and should be adopted by the Court in order to encourage enforcement of the important public policies inherent in the Fair Labor Standards Act. *See generally* Birch Decl. and Ferguson Decl.

The hourly rate of $180 per hour of associate attorneys Nicholas Warden, who has more than two years of experience, and Jason Robles, who has more than three years of experience, is reasonable and is lower than the rates cited by Mr. Sinclair from Holland & Hart. Belodoff Decl. ¶29.

Similarly, the hourly rates of $150 per hour for Jennifer Hanway[4] and Clare Thibeau, are reasonable and are substantially lower than the hourly rates of $180-$205 per hour charged for paralegals in Holland & Hart's Boise office as Mr. Sinclair stated. *See* Belodoff Decl. at ¶30.

---

[4] In addition to being a full-time paralegal at Fisher Rainey Hudson, Ms. Hanway is a third year law student at Concordia University School of Law. Hanway Decl. ¶4. She was the Co-Editor-in-Chief for the Concordia Law Review and she expects to graduate magna cum laude in December of 2015. *Id*. at ¶¶ 4 and 7. Further, on December 26, 2014, the Idaho Supreme Court entered an order permitting her to practice in state courts in the State of Idaho under the supervision of an attorney. *Id*. at ¶5.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 8

The Declarations of Jeremiah Hudson (¶¶16-22), Howard Belodoff (¶25), Allison Blackman (¶7), and Vaughn Fisher (¶9) have identified the different hourly rates for the attorneys working on this case. The Declarations of Jeremiah Hudson (¶23) and Jennifer Hanway (¶10) have identified the hourly rates for the paralegals working on this case. These Declarations, as well as the Declarations of Erika Birch and Deborah Ferguson, establish that the rates are fair, reasonable, and reflect the prevailing market rate in Idaho. Plaintiffs' counsel thus billed their hours at reasonable hourly rates.

**B. Plaintiffs' Hours Expended Were Reasonable.**

In *Moreno v. City of Sacramento*, the Ninth Circuit stated that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case…" 534 F.3d 1106, 1112 (9th Cir. 2008).

The Ninth Circuit has acknowledged that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Plaintiffs have achieved substantial success on behalf of the Trainers with the settlement equal to 80.35% of each Trainer's back overtime claims,[5] as well as a judgment for liquidated damages. *See* Dkts. 138, 139. Maximus's expert asserted that the total of 9,892.5 overtime hours claimed by the Boise Trainers should be reduced to 3,458 overtime hours or 35 percent of the claimed hours and that the total of 6,211 overtime hours claimed by the Brownville Trainers should be reduced to 3,013 overtime hours or 48.5 percent of the claimed hours. Dkt. 99-11 at 3 ¶10 and 13 ¶39. Plaintiffs were able to hold Maximus accountable for its unlawful pay practices pertaining to Trainers.

---

[5] No Trainers objected to the proposed settlement agreement, which left only the issue of liquidated damages to be decided by the Court. *See* Dkt 139.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 9

In Plaintiffs' counsel's experience, the proposed settlement of $375,779.16 plus the Court's order awarding Trainers liquidated damages is substantial, especially considering the relatively small class size of 46 named and opt-in Plaintiffs. The proposed settlement of this case is an outstanding result for the Plaintiff class.

In summary, the results obtained on Plaintiffs' behalf in this case amply support the request for attorney's fees and costs.

### 1. Time and labor expended

As set forth in the Declarations of Jeremiah Hudson, Howard Belodoff, Vaughn Fisher, and Allison Blackman, filed herewith, Plaintiffs' firm has expended over 2,462.6 hours of attorney time and 512.3 hours of paralegal time in connection with this matter. Plaintiffs' counsel anticipates supplementing Plaintiffs' Motion for Attorneys' Fees to account for costs and fees incurred as a result of litigating the issue of costs and fees and ensuring that the settlement and court ordered proceeds are distributed to Plaintiff Trainers' properly. While this case was brought in conjunction with FLSA claims brought by Maximus Supervisors, Defendant successfully argued to bifurcate the litigation track for the two sub-classes. Plaintiffs' counsel is not requesting to be reimbursed for time spent directly on the Supervisor's claims, which is still in the discovery phase of litigation.

Mr. Hudson and Mr. Belodoff were primarily responsible for investigating the facts and legal claims, drafting the initial Complaint, and prosecuting this case. Belodoff Decl. at ¶¶7 and 9. Mr. Hudson and Mr. Belodoff also supervised and directed the other attorneys and paralegals who assisted with the case. *Id*. The services of the other attorneys and paralegals that provided assistance in this case were necessary due to the time constraints required by complex litigation and were not duplicative or unnecessary. *Id*.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 10

Mr. Hudson and Mr. Belodoff began representing Plaintiff Trainers in mid-October of 2013. Belodoff Decl. ¶7. Plaintiff Trainers' case involved extensive discovery, including the review and analysis of over 200,000 Bates numbered documents. Belodoff Decl. ¶¶9 & 11. Additionally, the work involved in reviewing Maximus's payroll records, time keeping system, badge swipe data, emails and other documentation that Plaintiffs and their attorneys were required to review and regularly consult with nearly all Trainer Plaintiffs in their attempt to determine when Trainer Plaintiffs worked overtime was substantial and tedious. Belodoff Decl. ¶13.

This case was complex, involving several technical aspects of the FLSA and the accompanying regulations, including interrelationship between the FLSA and the Service Contract Act ("SCA").[6] *See* Dkt. # 84-1. The case has been pending since January 24, 2014, although Plaintiffs' counsel had been investigating and preparing this case since around mid-October 2013. Hudson Decl. at ¶ 7. During the 25 months that Plaintiffs' counsel has worked on this case, Plaintiffs' counsel expended considerable effort in prosecuting this action. *See* g*enerally* Hudson Decl., Belodoff Decl., Blackman Decl., Fisher Decl., and Hanway Decl.

To understand the significant number of hours required to litigate this case, the Court should consider that Plaintiffs' attorneys represented 46 Plaintiff Trainers located in both Boise, Idaho and Brownsville, Texas, many of whom maintained a proactive interest in keeping apprised and providing input in the various developments as they occurred throughout the case. Hudson Decl. at ¶13. Plaintiffs' attorneys conducted/defended numerous depositions in Idaho and Texas; Defendant produced over 200,000 pages of documents that required extensive review time and also necessitated an extensive motion in limine, a motion to strike, as well as a motion to compel. Belodoff Decl. ¶16; Hudson Decl. ¶8. During the course of litigation, Maximus filed a motion for

---

[6] See e.g. Defendant's Memorandum in Support of Maximus, Inc.'s Motion for Partial Summary Judgment Re: Retaliation. Dkt. 84-1.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 11

partial summary judgment, Trainers filed a motion for summary judgment, and the Defendant filed an additional cross motion for summary judgment. *See* Dkts. 84, 93-94, and 129. All of the motions filed in this case were fully briefed by the parties. Furthermore, the parties engaged in 25 hours of mediation in an unsuccessful attempt to resolve this case. Belodoff Decl. ¶17.

Maximus retained an expert witness to support its defenses and contentions regarding the number of overtime hours that Trainers worked at both sites. Belodoff Decl. ¶15. The expert's report contested the number of overtime hours claimed by Trainers. *Id.*; Dkt. 103-1 and 103-2. Maximus's expert contended that "Plaintiffs have not provided accurate and reliable evidence or a methodology to support the claimed hours" and "Plaintiffs have not provided any evidence or a methodology to support their apparent claim that these Trainers [Trainers who filed Declarations to support summary judgment] are representative of the other Trainers in Boise or Brownville." Belodoff Decl. ¶15; Dkt. 99-11 at 3 ¶7.

Plaintiffs filed a Motion in Limine, mentioned above, to contest the methodology and reliability of Defendant's expert opinion on the amount of overtime hours the Trainers worked. Belodoff Decl. ¶16; Dkts. 102-107 and 121. Mr. Belodoff spent a considerable amount of time analyzing Maximus' expert report. Belodoff Decl. ¶16. The Motion in Limine required a thorough and complete analysis of the report's findings and opinions based upon a review of thousands of computations and voluminous documents. *Id*. This analysis could only be done after Plaintiffs served interrogatories and requests for production of documents regarding the expert's opinions and findings and by filing a Motion to Compel because the expert's report failed to disclose necessary information on what data the expert used to reconstruct and extrapolate the hours worked on a weekly basis using her own untested methodology. *Id.*; Dkts. 108 and 122. The Trainers were able to establish that the expert's extrapolation methodology resulted in a high error rate by using

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 12

available documentation that indisputably established numerous days the Trainers were working overtime hours which had not been calculated into the expert's analysis. Belodoff Decl. ¶16; Dkt. 121 at 13-16. This created a substantial amount of work on behalf of Trainers counsel. *See* Belodoff Decl. at Ex. 2.

Along with Plaintiffs Motion for Summary Judgment, mentioned above, Plaintiff filed five Trainer declarations and hundreds of pages of exhibits. Belodoff Decl. ¶18; Dkts. 93-94 and 121. Maximus submitted twelve declarations in opposition to the Motion for Summary Judgment including declarations from three undisclosed Trainers and documents not previously produced in response to discovery, which contested the overtime hours worked by Trainers in Boise and Brownville. Belodoff Decl. ¶18; Dkt. 99. Plaintiffs filed a Motion to Strike the undisclosed Declarants and the newly produced documents. Belodoff Decl. ¶18; Dkts. 101 and 118. Reviewing and analyzing the untimely produced discovery created a substantial amount of work for Trainers' counsel. *See* Hudson Decl., Ex. 1.

The parties had substantial disagreements throughout the course of the litigation, requiring Plaintiffs' counsel to spend substantial amounts of time in order to adequately prosecute Trainers' case. This included, among other examples, whether Trainers case should be on an expedited litigation track, as requested by Defendant; (See Dkts. 16-18); the form of the proposed notice to Trainers (See e.g. Dkt. 23); whether Defendant kept accurate timekeeping records pursuant to the FLSA (See e.g. Dkt 99 at *15-16); whether Trainers' established having worked any compensable overtime (Dkt. 99 at *17-24), despite Defendant's expert witness's position to the contrary (See Dkt. 99 at *37); whether the testimony of Trainer declarants was sufficient as a representative sample (Dkt. 99 at *24-29); the reliability of Trainers' overtime calculations (Dkt. 99 at *31-37); whether Defendant acted in good faith and reasonably in its classification decisions regarding

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 13

Trainers (Dkt. 99 at* 38-45); and the admissibility of documents produced to Plaintiffs by Defendants (Dkt. 129-1 at *18).

Further, Defendant maintained the position that it *had not* misclassified Trainers in its Answer and its discovery responses, which plainly contradicted its prior position to this Court when successfully arguing for an expedited litigation plan for Plaintiff Trainers at the outset of this case, requiring Plaintiffs to conduct substantial amounts of discovery, research, and factual investigation in anticipation of having to litigate the issue of misclassification—all within an expedited litigation timeframe. *See* Hudson Decl. ¶ 12, and Dkt 17-1. Defendant's contradictory positions can, at best, be described as frivolous.

This case also required a substantial amount of skill and time in handling the 46 Plaintiff Trainers, who all had varying amounts of claimed overtime hours and who had varying opinions regarding the value of their claims making the settlement process time consuming and difficult. Hudson Decl. ¶13. Each Plaintiff Trainer, whether an original Plaintiff or an opt-in Plaintiff, made the affirmative decision to be involved in this case. Most of the Plaintiff Trainers were proactively involved in the litigation of their claims throughout the course of the litigation. *Id*. Many Plaintiff Trainers required regular communications with Plaintiffs' attorneys regarding the developments of the case, the various and evolving strategy options in moving forward with the case, and the propriety of settling their claims. *Id*. Addressing concerns of the clients and coming to a settlement that all of the clients agreed to took a substantial amount of skill and time from Plaintiffs' counsel. *Id*. The time committed to these necessary communications with Plaintiff Trainers was primarily the responsibility of Mr. Hudson with the assistance of Ms. Blackman, whose hourly rates are substantially lower than Mr. Belodoff's hourly rate. *See Id*.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 14

Whenever possible, each attorney and paralegal worked on separate parts of the case to avoid duplication. Belodoff Decl. ¶8. An example of this is that Mr. Hudson was the primary contact for clients when that was necessary except when client meetings were conducted to update Trainers on the status of the case or to prepare for discovery or the mediation. *Id*. Mr. Hudson and a paralegal did most of the document review. *Id*. However, due to the number of Trainers and the complexity of the case the attorneys and paralegals had to coordinate their efforts by regularly meeting with each other. *Id*.

Further, Mr. Hudson estimates that there are at least 50 hours of attorney time that he is not seeking reimbursement for between mid-October 2013 through December 31, 2013, when Mr. Hudson was gathering facts and investigating this case. *See* Hudson Decl. ¶15. Mr. Hudson estimates that he spent well in excess of 100 hours on telephone calls with Plaintiff Trainers and opt-in Trainers answering their legal questions, inquiring into specific facts of Plaintiffs pertaining to their claims, and responding to inquiries regarding the status of the case, over the course of the litigation, for which Mr. Hudson is not seeking any reimbursement. *Id*.

As summarized in the time sheets attached to the Declarations of Howard Belodoff, Jeremiah Hudson, Vaughn Fisher, Allison Blackman, and Jennifer Hanway, filed herewith, this case involved more than 2,501.2 attorney hours and 512.3 paralegal hours. The time commitment to litigate the Plaintiff Trainers' case, which was reasonable and necessary, represents a significant opportunity cost in terms of other cases, either hourly or contingency, on which Mr. Belodoff or Mr. Hudson could have worked over the past 25 months. In addition, Plaintiffs' counsel has advanced all of the costs of this litigation, since Plaintiffs did not have the ability to pay the costs associated with this case. Belodoff Decl. ¶23.

Below, Plaintiff sets forth the amount of time reasonably and necessarily expended over

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 15

the course of the past 25 months that each timekeeper spent litigating the Plaintiff Trainers' case for which Plaintiff Trainers are requesting,[7] as well as each timekeeper's reasonable hourly rate:

### 2. Attorneys

Jeremiah Hudson: 1,291 hours X $250 = $322,750.00. Hudson Decl. at Ex. 1.

Howard Belodoff: 798.9 hours X $425 per hour = $339,532.50. Belodoff Decl. at Ex. 2.

Allison Blackman: 399.7 hours X $225 per hour = $89,932.50. Blackman Decl. at Ex. 1.

Vaughn Fisher: 57.4 hours X $350 per hour = $20,090.00. Fisher Decl. at Ex. 1.

Jason Robles: 22.7 hours X $180 per hour = $4,086. Hudson Decl. at Ex. 2

Nicholas Warden: 13.1 hours X $180 per hour = $2,358.00. Hudson Decl. at Ex. 3.

### 3. Paralegals

Jennifer Hanway: 439.6 hours X $150 = $65,940.00. Hanway Decl. at Ex. 2.

Clare Thibeau: 72.7 hours X $150 per hour = $11,055.00. Hudson Decl. at Ex. 6.

The total amount that the Trainers are requesting in fees for the attorneys and paralegals at Fisher Rainey Hudson (which does not include Mr. Belodoff) is $498,201.50. Adding Mr. Belodoff's request of $339,532.50 in attorney's fees, the total amount requested in attorney fees requested for prosecuting Trainers' case is $837,734.00.

### IV. PLAINTIFF IS ENTITLED TO COSTS UNDER 28 U.S.C. § 1920 AND 29 U.S.C. § 216(b).

Plaintiffs seek to recover costs pursuant to 28 U.S.C. § 1920 and 29 U.S.C. § 216(b) in the amount of $19,521.88. In support of the request for the costs Plaintiff Trainers have submitted a verified bill of costs and supporting documentation. Hudson Decl. ¶26, Ex. 5. Plaintiffs' counsel

---

[7] In its discretion, Plaintiffs have excluded the time spent by Fisher Rainey Hudson attorneys, Rebecca Rainey (5.7 hours at $250 per hour) and Nels Mitchell (1 hour at $425 per hour), for their time expended in representing Trainer Plaintiffs. Additionally, Plaintiffs have excluded the 50 hours of time that legal assistant Steffanie Coy, who bills at $110 per hour, spent in connection with this case.

MEMORANDUM IN SUPPORT OF PLAINTIFF TRAINERS' MOTION FOR COSTS AND ATTORNEYS' FEES- 16

incurred $19,521.88 in out-of-pocket expenses and litigation-related expenses which, in Plaintiffs' counsel judgment, were necessary in this action. *Id*.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve attorney's fees of $844,037.33 to be paid by defendant to Plaintiffs' counsel. In addition, Plaintiffs respectfully request that the Court approve reimbursement of $19,521.88 in costs to be paid by Defendant.

DATED this 11th day of December, 2015.


/s/_____
Jeremiah Hudson
Attorney for Plaintiffs


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of December, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing and a copy of this document to the following persons:

B. Newal Squyres
Nsquyres@hollandhart.com

Pamela S. Howland
phowland@hollandhart.com

Douglas L. Abbot
dabbott@hollandhart.com

Jennifer Jensen
jmjensen@hollandhart.com