1

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9                    DISTRICT OF IDAHO

10                     ----oo0oo----

11

12   YVETTE NORTON, JEANNETTE            CIV. NO. 1:14-0030 WBS
     RODRIGUEZ-GUZMAN, KELLY
13   BARKER, JOSEPH BELL, BRAD           MEMORANDUM AND ORDER RE: MOTION
     EPPERLY, STEPHANIE JONES,           FOR FINAL APPROVAL OF CLASS
14   KATHERINE KELLEY KNOWLES,           SETTLEMENT
     NANCY RICHARDS, and MARK
15   ZUMWALT, individually and on
     behalf of all others
16   similarly situated,

17              Plaintiffs,

18        v.

19   MAXIMUS, INC.,

20
                Defendant.
21

22
                       ----oo0oo----
23

24        Plaintiffs brought this collective action against

25   defendant Maximums, Inc., alleging that defendant misclassified

26   them as salaried employees, failed to pay them overtime wages,

27   and failed to keep accurate time records in violation of the Fair

28   Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  (First

                              1

Am. Compl. ("FAC") (Docket No. 34).)  There were two sub-classes

in this action: a trainer sub-class and a supervisor sub-class.

(Id. at 2.)  The trainer sub-class has settled its claims with

defendant, and the court has approved that settlement.  (See Nov.

19, 2015 Order (Docket No. 139).)  Before the court now is the

supervisor sub-class's Motion for final approval of its

settlement with defendant.  (Pls.' Mot. (Docket No. 212).)

I.   Factual and Procedural Background

        Defendant operates calls centers across the country

that "interface with the public regarding . . . the Affordable

Care Act."  (FAC ¶ 2.)  It employs--at its Boise, Idaho and

Brownsville, Texas locations--"first-level" supervisors who

manage its call agents, monitor phone calls, and compile reports

for higher-level managers within the company.  (Id. ¶ 4.)  These

supervisors ("supervisors") comprise the supervisor sub-class.

(See id. ¶ 13.)

        Supervisors brought this action against defendant on

January 24, 2014, alleging the following claims under the FLSA:

(1) misclassification of employment status, 29 U.S.C. §

213(a)(1); (2) failure to pay required overtime, id. §

207(a)(2)(C); and (3) failure to keep accurate time records, id.

§ 211(c).[1]  (See Compl. at 21-24 (Docket No. 1).)  On May 19,

---

[1]    The named supervisor in this action, Yvette Norton,
also individually alleges that defendant unlawfully retaliated
against her for complaining about its wage practices.  (See FAC
at 24-26.)  As the court noted in its February 22, 2017 order,
supervisors have agreed to release "all the claims that were
asserted in [their] Complaint and Amended Complaint against
[defendant]" as part of this settlement, including Ms. Norton's
retaliation claim.  (Feb. 22, 2017 Order at 11 (Docket No. 211).)

2

2016, the court granted summary judgment to supervisors on the issue of misclassification, finding that defendant's method of calculating their wages failed to meet the 'salary basis' test of 29 C.F.R. § 541.602(a). (See May 19, 2016 Order at 21 (Docket No. 187).) Because defendant did not pay supervisors on a 'salary basis,' the court concluded, it misclassified them as exempt from FLSA-required overtime wages. (Id.)

On November 1, 2016, supervisors and defendant notified the court that they reached a settlement in this case. (Docket No. 204.) The settlement pays "$575,000 in overtime hours and $402,500 in [liquidated] damages" to supervisors, and a "separate award of costs and attorney fees of $575,280" to supervisors' counsel. (Pls.' Mem. in Supp. of Mot. for Prelim. Approval ("Pls.' Mem.") at 17 (Docket No. 206-1).) The average recovery, assuming each of the 106 supervisors who opted in to this action were to receive settlement funds, is $9,221.69.

The court granted final collective action certification and preliminary approval of class settlement to supervisors on February 22, 2017 ("preliminary approval order order"). (Feb. 22, 2017 Order (Docket No. 211).) Supervisors now move for final approval of their settlement with defendant. (Pls.' Mot.) Defendant supports supervisors' Motion. (See Def.'s Resp. (Docket No. 213).)

II.  Discussion

The Ninth Circuit has declared a "strong judicial policy" in favor of settling of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Where the "parties reach a settlement agreement prior to class

certification," however, "courts must peruse the proposed compromise to ratify both [1] the propriety of the certification" under Federal Rule of Civil Procedure 23(a), and "[2] the fairness of the settlement" under Rule 23(e).  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see also Khanna v. Inter-Con Sec. Sys., Inc., No. CIV S-09-2214 KJM, 2012 WL 4465558, at *3 (E.D. Cal. Sept. 25, 2012) (applying the two requirements stated in Staton in approving FLSA collective action settlement).  Each requirement generally proceeds in a two-stage process: preliminary approval, followed by final approval.  See Carter v. Anderson Merchandisers, LP, No. EDCV 08-00025-VAPOPX, 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010).

        With respect to the propriety of certification, the court has already granted final collective action certification in this action.  (Feb. 22, 2017 Order at 16.)

        With respect to the fairness of the settlement, the court preliminarily approved the parties' settlement as fair and reasonable on February 22, 2017.  (Id.)  The only remaining issue in the settlement approval process, therefore, is whether the court should grant final fairness approval with respect to the parties' settlement.

    A.    Terms of Settlement

        The key terms of the parties' settlement are as follows:

    (1)    **The Settlement Class:** The settlement class is comprised
            of "[a]ll First-Level Supervisors employed by Maximus
            from on or around August of 2013 and thereafter who
            were assigned to supervise a team of approximately 14

4

call center employees responsible for handling telephone calls on behalf of Maximus[, ]were classified by the company as exempt employees under the FLSA," and opted in to this action.  (Id.)

(2) **Notice:** Supervisors' counsel sent opt-in notice via postal mail to supervisors in October 2014.  (See Oct. 28, 2014 Order (Docket No. 62).)  106 supervisors opted in to this action. (Pls.' Mem. at 19.)  After opt-in took place, supervisors' counsel informed opt-in supervisors on at least six different occasions, via postal mail, email, and telephone, that they needed to submit their claimed overtime hours in order to be eligible to receive settlement funds. (See Pls.' Mot. at 3-5.)  92 opt-in supervisors submitted their claimed overtime hours. (Pls.' Mem. at 19.)  After the court preliminarily approved the parties' settlement, supervisors' counsel mailed and emailed notice of settlement to all opt-in supervisors.  (Id. at 2.)

(3) **Opt In / Opt Out Procedure:** As noted above, an opt-in notice was sent to supervisors in October 2014. Supervisors had sixty days from the date opt-in notice was sent to opt in to this action by mail, email, or fax.  (See Opt-In Notice at 1 (Docket No. 61).)  To receive payment under the parties' settlement, opt-in supervisors also needed to submit their claimed overtime hours.  Supervisors were able to submit those hours by email from June 2014 through September 2016. (See Decl. of Jennifer Hanway ("Hanway Decl.") Ex. A,

June 3, 2014 Email Correspondence; Decl. of Jeremiah
Hudson ("Hudson Decl.") Ex. A, Sept. 8, 2016 Email
Correspondence.)  Because each opt-in supervisor agreed
to be bound by this action, (see Opt-In Notice at 1
("You will be bound by the decisions of the Court
concerning this lawsuit, whether favorable or
unfavorable.")), no opt-out procedure has been
provided.

(4)  **Objection Procedure:** Pursuant to the court's
preliminary approval order, opt-in supervisors were
given twenty-six days from the date notice of
settlement was sent to object to the parties'
settlement.  (See Feb. 22, 2017 Order at 17 (requiring
that notice be sent by March 2 and objections be filed
by March 28).)  The notice of settlement stated that
objections must be in writing, sent to supervisors'
counsel, and filed with the court by March 28, 2017.
(See id.; Notice of Settlement at 4 (Docket No. 206-
2).)  The notice also stated that supervisors who wish
to object in person or via counsel at the final
fairness hearing must file a notice of appearance with
the court by March 28.  (See Notice of Settlement at
4.)  The court is aware of one objection that was sent
to supervisors' counsel, but not filed with the court.
(See Pls.' Mot. at 2-3.)

(5)  **Settlement Amount:** Defendant will pay $575,000 in back
overtime wages and $402,500 in liquidated damages to
participating supervisors.  (Notice of Settlement at 2-

6

1        3.)  This amount "will not be subjected to a reduction

2        for . . . attorneys' fees or costs."  (Id. at 3.)

3  (6)  **Attorneys' Fees and Costs and Enhancement Award:**

4        Supervisors' counsel will receive "a separate award of

5        costs and attorney fees of $575,280" under the parties'

6        settlement.  (Pls.' Mem. at 17.)  The named supervisor

7        in this action, Yvette Norton, has not requested an

8        enhancement award.

9  (7)  **Settlement Distribution:** Settlement funds will be

10       distributed "based upon the hours of . . . [unpaid]

11       overtime reasonably claimed by each Supervisor."  (Id.)

12       The number of claimed overtime hours that are

13       "reasonable" will be determined based on "period of

14       employment as a Supervisor," "a review of PTO, Holiday,

15       LWP and FMLA hours taken," and "a review of badge

16       swipes to determine the days Supervisors were present

17       at a call center."  (Id.)  Supervisors' counsel

18       represent that each supervisor who submitted his or her

19       claimed overtime hours can expect to receive

20       "approximately 79.09% of [his or her] reasonably

21       claimed overtime hours multiplied by an average

22       overtime hourly rate of $26.97," plus "an additional

23       payment equal to 78.94% of his or her reasonably

24       claimed overtime payment as liquidated damages."

25       (Notice of Settlement at 3.)  The average recovery,

26       assuming each of the 106 opt-in supervisors were to

27       receive settlement funds, is $9,221.69.

28  (8)  **Release:** The settlement will release "all the claims

that were asserted in the Complaint and Amended

Complaint against [defendant] under the FLSA in Boise,

Idaho or Brownsville, Texas." (Id.)  For supervisors,

these claims are: (1) misclassification of employment

status, 29 U.S.C. § 213(a)(1); (2) failure to pay

required overtime, id. § 207(a)(2)(C); and (3) failure

to keep accurate time records, id. § 211(c).  (See FAC

at 20-24.)  The settlement also releases an unlawful

retaliation claim, 29 U.S.C. § 215(a)(3), brought

individually by Ms. Norton.  (See id. at 24-26.)

B.   Fairness of Settlement

Federal Rule of Civil Procedure 23(e) "requires the
district court to determine whether a proposed [class] settlement
is fundamentally fair, adequate, and reasonable." Hanlon v.
Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  In
determining the fairness of a class settlement, the court is
directed by the Ninth Circuit to consider the following factors:

> [1] the strength of plaintiffs' case; [2] the risk,
> expense, complexity, and likely duration of further
> litigation; [3] the risk of maintaining class action
> status throughout the trial; [4] the amount offered in
> settlement; [5] the extent of discovery completed and
> the stage of the proceedings; [6] the experience and
> views of counsel; [7] the presence of a governmental
> participant; and [8] the reaction of the class members
> to the proposed settlement.

Id.; see also Murillo v. Pac. Gas & Elec. Co., No. 2:08-1974 WBS
GGH, 2010 WL 2889728, at *5 (E.D. Cal. July 21, 2010) (applying
Hanlon's factors in assessing fairness of FLSA collective action
settlement); but see In re Bluetooth Headset Prods. Liab. Lit.,
654 F.3d 935, 946 (9th Cir.2011) ("The factors in a court's

fairness assessment will naturally vary from case to case."). The court addresses each factor in turn.

### 1. Strength of Supervisors' Case

An important consideration in determining the fairness of class settlements is the strength of the class's case balanced against the amount offered in the settlement. Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004). A district court, however, is not required to reach any ultimate conclusions on the merits of the case, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of SF, 688 F.2d 615, 625 (9th Cir. 2004).

The court has granted summary judgment to supervisors on the issue of misclassification. (May 19, 2016 Order at 21.) Pursuant to that order, supervisors have established their claim that defendant failed to pay them required overtime wages under the FLSA. However, the amount of overtime wages and liquidated damages due under the FLSA remain disputed. (Pls.' Mem. at 15.) Supervisors concede that they do "not have accurate time records of the hours they worked" and have "had to calculate their overtime hours from memory and by using incomplete badge swipe data and other types of documents." (Id.) "Had the parties not reached a settlement," supervisors represent, further litigation would have resulted over the amount of damages due in this case. (See id.)

The settlement reached in this case will compensate supervisors for "79.09% of [their] reasonably claimed overtime

hours" and pay them "78.94% of [their] reasonably claimed overtime payment as liquidated damages." (Id.; Notice of Settlement at 3.) The average recovery per opt-in supervisor under the settlement is $9,221.69. (Pls.' Mem. at 17, 19.) In light of the uncertainties surrounding determination of damages in this case, the court finds that the parties' settlement constitutes a fair resolution of supervisors' claims. See Rodriguez v. West Pub. Corp., No. CV 05-3222 R (MCX), 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (noting that a "settlement amount representing 33% of maximum possible recovery [is] well within a reasonable range" in class action settlements), rev'd on other grounds in Rodriguez v. West Publ'g Corp., 563 F.3d 948 (9th Cir. 2009).

> 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

As explained above, supervisors would have faced uncertainties with respect to proving the amount of damages due in this case had the parties not reached a settlement. Prolonging litigation over the amount of damages due would have required both sides to expend "hundreds of [additional] hours of attorney time" and additional litigation costs. (Id. at 16.) "A new round of discovery on the [issue of] claimed [overtime] hours," and possibly a "jury trial," would have been necessary to resolve the issue of damages. (Id.) These uncertainties, expenses, and delays weigh in favor of approving the parties' settlement. See DIRECTV, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain

10

results.").

### 3. Risk of Maintaining Class Action Status Throughout Trial

Though defendant consented to class certification for purposes of settlement, (see Def.'s Resp. at 1), it represents that it "may have moved to de-certify the conditional class certification" granted by the court in August 2014 had this case proceeded on the merits, (see Pls.' Mem. at 16). Supervisors agree that "[t]here is no assurance that [the] issue [of class certification] would have been . . . resolved" in their favor had this case proceeded. (Id. at 17.) The risk that supervisors would not have been able to maintain class action status throughout trial favors settlement. See Castillo v. ADT, LLC, No. CV 2:15-383 WBS DB, 2017 WL 363108, at *5 (E.D. Cal. Jan. 25, 2017) (noting that where "class certification is not guaranteed," the risk of maintaining class action status favors settlement).

### 4. Amount Offered in Settlement

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Ontiveros v. Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." DIRECTV, 221 F.R.D. at 527 (citing cases).

The parties' settlement pays "$575,000 in overtime hours and $402,500 in [liquidated] damages" to supervisors.

(Pls.' Mem. at 17.)  Settlement funds will be distributed "based upon the [number of] hours of . . . overtime reasonably claimed by each Supervisor."  (Id.)  The average recovery per opt-in supervisor is $9,221.69.  Supervisors represent that the settlement will compensate supervisors for "79.09% of [their] reasonably claimed overtime hours" and pay them "78.94% of [their] reasonably claimed overtime payment as liquidated damages."  (Id. at 15; Notice of Settlement at 3.)

The court finds no reason to doubt the fairness of the settlement award in this case.  The award appears to be well within the range of settlements that district courts in this circuit have found to be reasonable.  See, e.g., Rodriguez, 2007 WL 2827379, at *9 (a class settlement award amounting to 33% of maximum possible recovery is reasonable).  Each participating supervisor will be able to recover a significant portion of their unpaid overtime hours and liquidated damages.  Accordingly, the court finds the amount offered in the parties' settlement to be fair and reasonable.

> 5.   Extent of Discovery Completed and Stage of
>      Proceedings

A settlement that occurs in an advanced stage of a case indicates that the parties carefully investigated and vigorously litigated the case before reaching a resolution.  See Alberto v. GMRI, Inc., Civ. No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12, 2008).  The parties in this case litigated this action for well over two years before settling it.  (See Compl. (filed in January 2014); Docket No. 204 (notifying court that case settled in November 2016).)  They reached settlement

after engaging in "extensive" discovery "that required the production and review of hundreds of thousands of documents" and several depositions, (Pls.' Mem. at 17-18), and litigating motions for class certification, (see Aug. 25, 2014 Order (Docket No. 59)); summary judgment, (see May 19, 2016 Order); and reconsideration of summary judgment, (see Sept. 2, 2016 Order (Docket No. 197)).  Settlement discussions included several "offers and counter offers."  (Pls.' Mem. at 15.)  In light of the advanced stage of this action and the efforts put forth by the parties in litigating it, the court finds that the extent of discovery and state of proceedings in this case weigh in favor of approving the parties' settlement.

6.    Experience and Views of Counsel

"When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and [their] previous experience with class action lawsuits." Murillo, 2010 WL 2889728, at *8.  Supervisors' counsel represent that they have "many years of litigation experience" and, as one might surmise, great familiarity with this case. (Pls.' Mem. at 18.)  Counsel believe "that the proposed settlement is fair and reasonable and provides sufficient compensation to the Supervisors." (Id.)  The court finds no reason to doubt these representations. Accordingly, this factor weighs in favor of approving the parties' settlement.

7.    Presence of Government Participant

No government entity participated in this action.  This factor is therefore irrelevant to the court's analysis.

1          8.   Reaction of Class Members

2              "It is established that the absence of a large number

3     of objections to a proposed class action settlement raises a

4     strong presumption that the terms of a proposed class settlement

5     action are favorable to the class members."  DIRECTV, 221 F.R.D.

6     at 529.  Supervisors' counsel sent notice of settlement to each

7     of the 106 supervisors who opted in to this action.  (See Pls.'

8     Mot. at 2.)  Only one supervisor objected.  (Id. at 5.)  The

9     general absence of objections among opt-in supervisors

10    establishes a presumption that the settlement in this case is

11    fair to opt-in supervisors.  See DIRECTV, 221 F.R.D. at 529.

12             The sole objection, raised by supervisor James Wilfong,

13    does not rebut that presumption or otherwise warrant rejection of

14    the parties' settlement.

15             As an initial matter, Mr. Wilfong did not comply with

16    the objection procedure set forth by the court in its preliminary

17    approval order in objecting.  The court stated in its preliminary

18    approval order that "[a]ny objection to the parties' proposed

19    settlement shall be filed" with the court.  (Feb. 22, 2017 Order

20    at 17.)  Supervisors' counsel relayed that requirement to

21    supervisors in the notice of settlement.  (Notice of Settlement

22    at 4 ("You must . . . mail your Objection to the Clerk of the

23    Court of the United States District Court.").)  The notice of

24    settlement expressly warned that failure to "object in the manner

25    described" in the notice will be "deemed to [constitute] waive[r

26    of] any objections."  (Id. at 4-5.)

27             Mr. Wilfong did not file his objection with the court.

28    The court is only aware of his objection because he emailed the

objection to supervisors' counsel, who brought the objection to the court's attention.[2] (See Pls.' Mot. at 2.)  Mr. Wilfong's failure to file his objection, as required by the court, is sufficient grounds for the court to disregard his objection.  See In re TD Ameritrade Account Holder Litig., No. C 07-2852 SBA, 2011 WL 4079226, at *11 (N.D. Cal. Sept. 13, 2011) (disregarding objection to settlement where objector "submitted [his] objection to Class Counsel, but did not file [the] objection with the Court as required").

Even if the court were to consider Mr. Wilfong's objection, the objection would fail on the merits.  Mr. Wilfong objects because supervisors' counsel plan to exclude him from receiving settlement funds due to his purported failure to submit his claimed overtime hours.  (See Hudson Decl. Ex. B, Wilfong Objection.)  Mr. Wilfong claims that he submitted his hours by postal mail in September 2016.  (Id.)  Supervisors' counsel claim that they never received his hours, (see Decl. of Steffanie Coy ("Coy Decl.") ¶ 3 (Docket No. 212-3)), and that he ignored at least seven attempts they made to contact him to obtain his hours over the course of litigation, (see Pls.' Mot. at 3).  The settlement, supervisors' counsel note, was negotiated without consideration for Mr. Wilfong's hours.  It would be unfair to award funds that were negotiated as payments in satisfaction of other supervisors' unpaid overtime hours to Mr. Wilfong,

---

[2]    In his email to supervisors' counsel, Mr. Wilfong "stated that he would be mailing his Objection to the Clerk of the Court."  (Pls.' Mot. at 2-3.)  No objection was filed with the court as of the time of the final fairness hearing on April 17, 2017, however.  The deadline to file an objection was March 28, 2017.  (Feb. 22, 2017 Order at 17.)

supervisors' counsel contend.

   The court agrees with supervisors' counsel's position. Evidence submitted by supervisors' counsel indicates that counsel attempted to contact Mr. Wilfong at least seven times during the course of this litigation. (See June 3, 2014 Email Correspondence; Coy Decl. Ex. A, Nov. 11, 2014 Email Correspondence (Docket No. 212-3); id. Ex. B, Nov. 24, 2014 Postal Mail Correspondence; Hanway Decl. Ex. B, Sept. 14, 2015 Email Correspondence; Coy Decl. Ex. C, May 24, 2016 Email Correspondence; Decl. of Angie Perkins ¶ 3 (testifying that counsel attempted to contact Mr. Wilfong by phone in August 2016) (Docket No. 212-1); Sept. 8, 2016 Email Correspondence.)  Each attempt to reach Mr. Wilfong was met with silence. (See Pls.' Mot. at 3.)

   Mr. Wilfong claims that he responded to counsel's September 2016 correspondence by submitting his overtime hours via postal mail.  (See Wilfong Objection.)  Even if that were true, Mr. Wilfong did not comply with counsel's instructions in submitting his hours, as counsel had requested that the hours be submitted by email, as opposed to postal mail, due to the urgent nature of the request.[3]  (See Sept. 8, 2016 Email Correspondence.)  In light of Mr. Wilfong's failure to respond to counsel's numerous attempts to reach him, and in light of his failure to follow counsel's instructions in submitting his overtime hours, the court will not fault counsel for their non-

---

[3]   The request indicated that settlement negotiations with defendant were ongoing, and that the number of overtime hours claimed by supervisors was the key consideration in settlement discussions.  (See Sept. 2016 Email Correspondence.)

receipt of Mr. Wilfong's hours.

Because it would be unfair to award funds that were negotiated as payments in satisfaction of other supervisors' unpaid overtime hours to Mr. Wilfong, the court will not require supervisors' counsel to allocate settlement funds to him. Accordingly, Mr. Wilfong's objection fails on the merits, and the court finds that the reaction of opt-in supervisors to the parties' settlement favors approval of the settlement.

Having considered supervisors' reaction and other factors relevant to assessing the fairness of the parties' settlement, the court finds the settlement to be fair, adequate, and reasonable under Rule 23(e).

C.    Attorneys' Fees and Costs

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  If a class action settlement includes an award of attorney's fees, that award must be evaluated in the overall context of the settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).  "[T]he award, like the settlement itself, [must be] reasonable, even if the parties have already agreed to an amount."  Bluetooth Headset, 654 F.3d at 941.

The Ninth Circuit has approved two methods of assessing the reasonableness of attorneys' fees awards in class action settlements: percentage-of-recovery and lodestar.  Vizcaino v.

1   <u>Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).  In

2   assessing the reasonableness of common fund class settlements,

3   such as this, the court has discretion to use either method.  <u>Id.</u>

4        Supervisors' counsel are requesting a fees and costs

5   award of $575,280.  (Pls.' Mem. at 17.)  The amount sought

6   constitutes approximately 37% of the total money paid by

7   defendant in this settlement.  The court noted in its preliminary

8   approval order that while the amount sought surpasses the 25%

9   benchmark the Ninth Circuit set for attorneys' fees awards in

10  common fund class settlements, it appears to be justified under

11  the lodestar method.[4]  (Feb. 22, 2017 order at 14.)  The court

12  has not become aware of any facts since it preliminarily approved

13  counsel's requested fees and costs that changes its initial

14  analysis.  Accordingly, the court will grant final approval with

15  respect to counsel's requested fees and costs.

16       The court need not address any issues regarding an

17  enhancement award for Ms. Norton because she has not requested

18  one.

19  III. <u>Conclusion</u>

20       For the reasons stated in this Order, the court finds

21  the parties' settlement to be fair, reasonable, and adequate.

22  Consummation of the settlement in accordance with the terms

23  agreed to by the parties is approved.  The settlement shall be

24  binding upon all supervisors who opted in to this action.

25      [4]    The court based this finding on counsel's
26  representation at the preliminary approval hearing that the
    amount sought was the product of the number of hours counsel
27  reasonably expended litigating this case multiplied by the same
    attorney fee rate the court approved in the trainer sub-class's
28  settlement.  (Feb. 22, 2017 Order at 14.)

The court also finds supervisors' counsel's request of $575,280 in attorneys' fees and costs to be reasonable, and grants final approval with respect to that payment.

IT IS THEREFORE ORDERED that supervisors' Motion for final approval of their class settlement with defendant be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) The court appoints supervisor Yvette Norton as representative of the supervisor sub-class and finds that she meets the requirements of Federal Rule of Civil Procedure 23.

(2) The court appoints Howard Belodoff of Belodoff Law Office, PLLC, 1004 West Fort Street, Boise, ID 83702, and Jeremiah Hudson of Fisher Rainey Hudson, 950 West Bannock Street, Suite 630, Boise, ID 83702, as class counsel and finds that they meet the requirements of Rule 23.

(3) The court finds that the notice plan described in supervisors' Motion (Docket No. 212) was the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. That plan is approved and adopted. The notice of settlement sent to supervisors who opted in to this action (Docket No. 206-2) complies with Rules 23(c)(2) and 23(e), and is approved and adopted.

(4) The court finds that supervisors' counsel took appropriate steps to locate and inform all opt-in supervisors of the parties' settlement. No further

```
1        notice to opt-in supervisors is necessary.

2   (5)  As of the date this Order is signed, all supervisors

3        who opted in to this action hereby do and shall be

4        deemed to have fully, finally, and forever released,

5        settled, compromised, relinquished, and discharged

6        defendant of and from any and all claims that were

7        asserted in supervisors' complaint (Docket No. 1) and

8        amended complaint (Docket No. 34) against defendant

9        under the FLSA in Boise, Idaho or Brownsville, Texas.

10  (6)  Supervisors' counsel are entitled to attorneys' fees

11       and costs in the amount of $575,280.  Such fees shall

12       be paid by defendant to supervisors' counsel within

13       twenty-one days of the date this Order is signed.

14  (7)  Opt-in supervisors are entitled to $575,000 in

15       compensation for unpaid overtime hours and $402,500 in

16       liquidated damages.  Such funds shall be paid by

17       defendant to opt-in supervisors in accordance with the

18       terms of the parties' settlement within twenty-one days

19       of the date this Order is signed.

20  (8)  This action is dismissed with prejudice.  However,

21       without affecting the finality of this Order, the court

22       shall retain continuing jurisdiction over the

23       interpretation, implementation, and enforcement of the

24       settlement ratified in this Order with respect to all

25       parties in this action and their counsel of record.

26

27  The clerk is instructed to enter judgment accordingly.

28
```

Dated:  April 17, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE